# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *In re Marriage of Streur*, 2011 IL App (1st) 082326

---

| | |
|---|---|
| Appellate Court Caption | *In re* MARRIAGE OF STACY STREUR, Petitioner-Appellant, and JOHN STREUR, JR., Respondent-Appellee. |
| District & No. | First District, Third Division<br>Docket No. 1–08–2326, 1–09–0692, 1–09–0782, 1–09–0877 cons. |
| Filed | May 11, 2011 |
| Rehearing denied | June 10, 2011 |
| Modified | June 15, 2011 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | On appeal from orders entered in postdecree proceedings involving child support and attorney fees, the trial court's order modifying respondent's child support obligation retroactive to May 1, 2007, a date set by the trial court on February 27, 2009, after a hearing on the retroactivity issue, was modified by the appellate court to April 1, 2005, the day after petitioner's unallocated support terminated under the terms of the marital settlement agreement, and further, petitioner's petition to vacate the judgment based in part on respondent's alleged false statements about his income and assets was properly dismissed as untimely, and the award of petitioner's request for attorney fees was upheld over respondent's contentions that the fees were incurred in postdecree proceedings commenced several years after the judgment and that the fees resulted from petitioner being overly litigious and that she raised issues with no merit. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 98–D–16610; the Hon. Eileen Mary Brewer, Judge, presiding. |

| | |
|---|---|
| Judgment | Modified in part and affirmed in part. |
| Counsel on Appeal | Grund & Leavitt, P.C., of Chicago (David L. Grund, Marvin J. Leavitt, and David C. Adams, of counsel), for appellant. |
| | Berger Schatz, of Chicago (Jason G. Adess and Jennifer L. Cantrell, of counsel), for appellee. |
| Panel | PRESIDING JUSTICE QUINN delivered the judgment of the court, with opinion.<br>Justices Murphy and Steele concurred in the judgment and opinion. |

## OPINION

¶ 1    The petitioner, Stacey Streur, appeals from an order of the circuit court modifying the child support obligation of respondent, John Streur, retroactive to May 1, 2007, and from two orders dismissing her petition to vacate judgment under section 2–1401 of the Illinois Code of Civil Procedure (Code) (735 ILCS 5/2–1401 (West 2008)), which sought to vacate the marital settlement agreement provisions in the judgment of dissolution of marriage. Petitioner contends that the child support award should have been made retroactive to June 2, 2004, the date she initially filed a petition to modify and increase child support, and that the trial court erred in dismissing her section 2–1401 petition on *res judicata* and statute of limitations grounds. Respondent asserts that the trial court did not err in dismissing petitioner's section 2–1401 petition or in awarding child support retroactive to May 1, 2007, but did err in ordering him to pay petitioner's $127,000 attorney fee. For the reasons set forth below, we modify the trial court's order modifying respondent's child support obligation, making it retroactive to April 1, 2005, rather than May 1, 2007, and affirm the remaining trial court orders.

¶ 2                        I. BACKGROUND

¶ 3    The procedural history in this case is extensive, and only those facts relevant to the issues raised in this appeal are addressed here. A judgment dissolving the parties' marriage was entered by the trial court on April 18, 2000. The judgment incorporated a marital settlement agreement and a joint parenting agreement, which awarded the parties joint custody of their three minor children, with petitioner being the primary residential parent. Two provisions of the marital settlement agreement, section 4, addressing child support and section 8, addressing unallocated support, are pertinent to this appeal and provide as follows:

"4. CHILD SUPPORT

A. From JOHN's unallocated maintenance and child support payments, as provided in paragraph 8 below, STACY shall fully provide for [the minor children's] support without any further contribution from JOHN, except as otherwise provided in this Agreement.

B. JOHN shall pay the following expenses as support for [the minor children]:

(i) Ordinary and extraordinary medical, dental and optical expenses, as provided in paragraph 5 of this Agreement;

(ii) Major medical, dental and hospitalization insurance, as provided in paragraph 5 of this Agreement; and

(iii) [The minor children's] entire summer camp expenses for summer 2000 only.

C. JOHN's obligation to pay for [the minor children's] support shall terminate as to each child upon the first of the following events:

(i) Completion of the child's high school education or attaining the age of 19, whichever is first to occur;

(ii) The child's otherwise becoming emancipated; or

(iii) As otherwise ordered by a court of competent jurisdiction.

D. Upon termination of STACY's right to receive unallocated maintenance and child support the parties shall agree to an appropriate amount of child support. If the parties are unable to agree, the issue of child support shall be determined by a court of competent jurisdiction.

E. JOHN and STACY agree that child support pursuant to the guidelines contained in 750 ILCS 5/505 is not appropriate in light of the other financial provisions of this Agreement. JOHN and STACY agree and acknowledge that provisions of this Agreement are adequate to provide [their minor children] with their reasonable needs.

\* \* \*

8. <u>UNALLOCATED MAINTENANCE AND CHILD SUPPORT</u>

A. Commencing April 1, 2000 and continuing through March 1, 2005, JOHN shall pay STACY unallocated maintenance and child support based on his annual earned income. For purposes of calculating unallocated maintenance and child support, JOHN's annual earned income shall be defined as all taxable income received from the Burridge Group, L.L.C. or any subsequent employer, or as a result of his ownership profit points in the L.L.C., including salary, bonuses, and net profit distributions from his Burridge Group L.L.C. profit points, but not including 'phantom income' attributable to JOHN for federal and state income tax purposes, but not actually received by him. By way of example, JOHN's annual earned income shall not include business travel and expenses and medical insurance premiums attributable to him as income. JOHN shall not do anything to diminish or defer his income so as to reduce support under this paragraph.

B. The unallocated maintenance and support shall be paid as follows:

i) JOHN shall pay STACY 100% of his first $100,000 of earned income;

ii) JOHN shall pay STACY 0% of his earned income between $100,000 and $200,000;

iii) JOHN shall pay STACY 30% of his earned income in excess of $200,000.

iv) The amount of family support in partial years covered by this Agreement (year 2000 and year 2005) shall be determined using a prorated percentage of JOHN's annual gross income. JOHN's annual gross income shall be prorated in partial years covered by the Agreement. Family support in the 9 months covered in the year 2000 shall be based on 75% of JOHN's annual gross income. Family support for the 3 months covered in 2005 shall be based on JOHN's annual gross income.

JOHN has paid STACY the sum of $16,200 which shall constitute his unallocated maintenance and child support payments for the months of April and May, 2000. Commencing June 1, 2000, JOHN shall pay STACY the unallocated maintenance and child support on the 1st day of each month based upon his earned income in the prior month. During the period JOHN is obligated to pay STACY unallocated maintenance and child support pursuant to this paragraph, JOHN shall provide STACY, on a quarterly basis, his pay stubs, W-2 statements, and K-1 statements from Burridge Group, L.L.C., or any subsequent employer and his annual federal and state income tax returns showing his total income to verify his annual earned income as defined in paragraph 8, above. JOHN shall be permitted to redact those portions of his tax returns which do not relate to the Burridge Group, L.L.C. or any subsequent employer. JOHN shall pay the unallocated maintenance and child support directly to STACY and not through the Child Support Disbursement Unit.

C. JOHN's obligations to pay STACY unallocated family support shall terminate upon the first to occur of the following:

i) STACY's death;

ii) JOHN's death;

iii) STACY's cohabitation with another person on a resident continuing conjugal basis;

iv) STACY's remarriage;

v) March 1, 2005. (This does not terminate JOHN's obligation to pay support which was due on or prior to March 1, 2005)."

¶ 4    Approximately four years after the marital dissolution judgment, on June 2, 2004, petitioner commenced postdecree proceedings by filing two petitions: a petition to modify and increase unallocated support on the grounds that the children's expenses had increased and a second petition for rule to show cause, alleging that respondent had failed and refused to make a full and complete disclosure of his income from all sources and failed to provide petitioner with his pay stubs, W-2 statements, and K-1s on a quarterly basis. Petitioner's request for a modification of child support was continued from time to time until July 2006.

¶ 5 In the interim, on April 1, 2005, respondent filed a petition to set child support, since petitioner's unallocated support terminated on March 1, 2005. Also, in response to petitioner's second petition for rule to show cause, respondent filed a motion for declaratory judgment on September 20, 2005, arguing that under the plain language of the marital settlement agreement his "passive income" was excluded from the definition of income with regard to calculating petitioner's unallocated support. Respondent subsequently withdrew that motion when petitioner withdrew her second petition for rule to show cause. On December 12, 2005, petitioner filed a motion to enforce judgment alleging, in part, that respondent had refused to periodically make a full and complete disclosure of his income from all sources despite petitioner's repeated requests and had diminished his income in order to decrease his support obligation. On January 6, 2006, respondent filed a motion to strike and dismiss petitioner's motion to enforce judgment, which the trial court granted. Petitioner filed an amended motion to enforce judgment, on March 15, 2006, which the trial court again dismissed pursuant to a motion filed by respondent. Petitioner was granted leave to file a second amended petition to enforce judgment, which she did on June 2, 2006.

¶ 6 Shortly thereafter, petitioner obtained new counsel, who on June 14, 2006, filed a motion for voluntary dismissal in the divorce proceeding. On July 11, 2006, the trial court entered an agreed order of dismissal stating that "It is hereby ordered: *** That this cause be and is hereby DISMISSED on motion of Petitioner without prejudice."

¶ 7 After obtaining a dismissal in the domestic relations division, petitioner filed a petition to vacate judgment under section 2–1401 of the Code in the chancery division on November 9, 2006. Count I of the petition sought to vacate that part of the April 18, 2000 judgment for dissolution of marriage containing the parties' marital settlement agreement. Petitioner alleged that prior to the entry of the dissolution of marriage judgment, respondent made false statements of material fact regarding his income and assets upon which she relied, and that she could not have presented this matter to the court before the entry of judgment. Petitioner also alleged that since the judgment was entered respondent has continued to refuse to provide her with copies of his pay stubs, W-2 statements, K-1s, or tax returns as required by the marital settlement agreement and failed to disclose other financial documentation, including information about a 401(k) retirement account with Affiliated Managers Group. The remaining counts of the section 2–1401 petition alleged breach of fiduciary duty (count II), conversion (count III) and unjust enrichment (count IV), and sought an accounting (count V) and the imposition of a constructive trust (count VI).

¶ 8 On February 14, 2007, the chancery court entered an order consolidating petitioner's section 2–1401 petition with the pending matters in the domestic relations division. On February 26, 2008, respondent filed a motion to strike and dismiss the section 2–1401 petition arguing that petitioner failed to allege sufficient facts to state a claim, that the section 2–1401 petition was time-barred, and that her claims were barred by the parties' judgment for dissolution of marriage. On June 27, 2008, the trial court dismissed count I of petitioner's section 2–1401 petition with prejudice, stating that it "is time barred because this [2–]1401 was filed two years after the Second Amended Petition for Rule *** on essentially the same grounds as found in the [2–]1401." The court entered a written order of dismissal on July 24, 2008. Respondent subsequently filed a motion to strike and dismiss the remaining counts of

petitioner's section 2–1401 petition pursuant to section 2–619 of the Code (735 ILCS 5/2–619 (West 2008)) or, in the alternative, to reconsider the court's July 24, 2008 order, arguing that the remaining counts were predicated on the allegations in count I and, therefore, should also be dismissed. The trial court agreed and on February 27, 2009, entered an order dismissing the remaining counts of petitioner's section 2–1401 petition, stating that they were "based on the same allegations contained in the second petition for rule to show cause."

¶ 9      Meanwhile, the parties engaged in negotiations regarding child support but did not reach an agreement, and on May 18, 2007, petitioner filed a petition to set child support. On April 14, 2008, the trial court entered an agreed order setting respondent's child support obligation at $17,000 per month, effective March 2008. The court also determined that respondent owed $61,000 in retroactive support and ordered him to pay that amount within 10 days of the date of that order. Subsequently, petitioner filed a memorandum in support of an award of retroactive child support requesting that the April 14, 2008 order be made retroactive to the filing of her June 2, 2004 petition to modify child support or alternatively to April 1, 2005, the date her unallocated support ended. On January 9, 2009, during a hearing on the retroactivity issue, the trial court stated, in part, that "the July 11, 2006 order dismissed the cause and it was not a partial dismissal. *** Also[,] the marital settlement agreement is not self-executing. *** [I]t specifically provided that the parties agree on an appropriate amount of child support or the issue be determined by court order. I am unable to go back to 2004, '05 or 2006 to look at evidence regarding income." Subsequently, on February 27, 2009, the trial court entered a written order awarding petitioner child support retroactive to May 1, 2007, and attorney fees, with the amount to be decided at a later date. On March 18, 2009, after a hearing, the trial court entered an order awarding petitioner $127,000 in attorney fees, the full amount of the fees owed.

¶ 10      The following trial court orders were consolidated for appeal: the order making child support retroactive to May 1, 2007, the order dismissing count I of petitioner's section 2–1401 petition, the order dismissing the remaining counts of petitioner's section 2–1401 petition, and the order awarding petitioner attorney fees.

¶ 11                         II. ANALYSIS

¶ 12              A. Retroactive Modification of Child Support Award

¶ 13      On appeal, petitioner first argues that the trial court erred in failing to make its award of child support retroactive to June 2, 2004, the date she filed her initial petition for modification of child support. A trial court's decision regarding retroactivity of child support is usually reviewed under an abuse of discretion standard. *In re Marriage of Eberhardt*, 387 Ill. App. 3d 226, 233 (2008). However, when the issue presented is one of law, and the facts and the credibility of witnesses are not an issue, our review is *de novo. In re Marriage of Abrell*, 236 Ill. 2d 249, 255 (2010). Here, although the issue involves the retroactivity of child support, the trial court's decision was predicated on its finding that it had no authority to make the modification of child support retroactive prior to May 2007. This is a question of law, and therefore, we apply a *de novo* standard of review.

¶ 14    The issue of a retroactive modification of a child support award is addressed in section 510(a) of the Illinois Marriage and Dissolution of Marriage Act (Act) (750 ILCS 5/510(a) (West 2008)), which provides in relevant part as follows:

> "[T]he provisions of any judgment respecting maintenance or support may be modified only as to installments accruing subsequent to due notice by the moving party of the filing of the motion for modification." 750 ILCS 5/510(a) (West 2008).

¶ 15    The parties agree that under the statute, "the earliest point to which retroactive modification of maintenance or support payments may be ordered is the date on which the nonmoving party receives 'due notice' from the moving party of the filing of the modification petition." *In re Marriage of Hawking*, 240 Ill. App. 3d 419, 426 (1992). The parties disagree, however, as to the effect that a dismissal of a petition to modify child support has on determining the retroactivity date. Petitioner contends that the operative factor is the receipt of notice, and that respondent had notice that she was going to seek a modification of child support when she filed her motion on June 2, 2004 and no later than March 2005, when her unallocated support terminated under the terms of the marital settlement agreement. Respondent contends that under the plain language of the statute, there must be due notice *of the filing of a modification petition*, and that because petitioner dismissed her initial petition and did not file a petition to set child support until May 2007, the trial court correctly looked to the latter petition in setting a retroactivity date.

¶ 16    Petitioner relies on three cases to support her argument that a court may order a modification of child support retroactive to the filing date of a petition to modify support, even if that petition is subsequently dismissed. First, in *In re Marriage of Duerr*, 250 Ill. App. 3d 232 (1993), the mother was granted custody of the parties' two children and the father was ordered to pay child support. However, the father stopped making child support payments in May 1989 after the children moved in with him. After one of the couple's two sons moved back in with his mother in June 1990, she filed a petition for rule to show cause alleging that her former husband owed her child support arrearage from May 1989 to July 1990. The husband filed a petition to modify child support in August 9, 1990, and after that petition was dismissed, he filed an amended petition on February 21, 1991. In ruling on that motion, the trial court ordered the wife to pay the husband $350 per month for the support of one of the sons and reduced the husband's support payment to $1,000. The court also made the order retroactive to August 9, 1990, the date the husband filed his first petition to modify child support. On appeal, the wife contended that the order modifying child support should have been retroactive to February 1991 when the husband filed his amended petition. This court disagreed, holding that "[t]he fact that [the husband's] petition was originally dismissed is not controlling as [the husband] later filed an amended petition with leave of the court which related back to his original petition. [Citations.] *** [T]he date of due notice to [the wife] with respect to [the husband's] petition is the date of his original filing. The court could properly modify the support award for any installments accruing from the date of due notice. [Citations.]" *Duerr*, 250 Ill. App. 3d at 239.

¶ 17    Petitioner contends that similarly, in this case, the date that respondent received due notice that she was seeking a modification in child support was when she filed her initial petition on June 2, 2004. Although she was granted permission to dismiss her petition, that

dismissal was without prejudice, petitioner asserts and therefore, as in *Duerr*, she was clearly permitted to refile and the effective date of that refiling should be the date of her original petition because at that point respondent was on notice that she was seeking a modification of child support.

¶ 18    Petitioner also asserts that *Shoff v. Shoff*, 179 Ill. App. 3d 178 (1989), supports a finding that the date of notice should be determinative in making a retroactive child support award. In *Shoff*, the mother had been granted custody of the parties' minor child but subsequently agreed to an informal change of custody. After the child had lived with the father for almost two years, he filed a petition for temporary and permanent custody of the child. After the trial court granted temporary custody to the father, the mother filed a petition for rule to show cause alleging, *inter alia*, nonpayment of child support. The trial court found that the father's obligation to pay child support terminated on the date when the temporary custody order was entered. This court agreed, holding that "common sense dictates that, once legal and physical custody is placed in one parent, that custodial parent has no obligation to pay child support to the noncustodial parent." *Shoff*, 179 Ill. App. 3d at 186. The court acknowledged that section 510(a) provides that a judgment respecting child support may be modified only as to installments accruing subsequent to due notice of the moving party of the filing of the modification, but stated that "we think that in this case, appellant was put on due notice by the filing of the petition for temporary custody that she might lose custody of the child, and thereby also the right to collect child support payments. Although this does not follow the exact language of section 510(a), we think it fulfills the purpose of that section." *Shoff*, 179 Ill. App. 3d at 186.

¶ 19    Petitioner contends that as in *Duerr*, the *Shoff* court found that under the statute, the operative date in making a retroactive award of child support is the date that the opposing party is put on notice that a modification is being sought and not necessarily the date that the petition is filed. Therefore, petitioner asserts, because respondent knew that she was seeking a modification of child support in June 2004, when she filed her petition to modify and increase the unallocated support, the court should have made the order retroactive to that date.

¶ 20    Alternatively, petitioner argues that the latest date the court should have made the award retroactive to is April 1, 2005, the day after her unallocated support terminated under the terms of the marital settlement agreement. Petitioner cites *In re Marriage of Erickson*, 136 Ill. App. 3d 907 (1985), to support this argument. In *Erickson*, the parties' divorce judgment ordered the husband to pay unallocated support for the wife and child. A year later, the wife remarried, triggering a statutory terminating event to the continuing payment of unallocated support and maintenance. The husband reduced his monthly payments and three months later filed a petition for redetermination of unallocated maintenance and child support. The trial court determined that the husband was absolved from making maintenance payments and modified his child support obligation and made both orders effective as of the date of the wife's remarriage. This court affirmed that order finding that "[b]ased on the particular facts of this case," the trial court did not err in making modification of the award of unallocated maintenance and child support retroactive to the date of former's wife remarriage rather than the date husband filed a petition to terminate maintenance, which occurred three months

later. *Erickson*, 136 Ill. App. 3d at 915-16.

¶ 21    Petitioner contends that like the statutory terminating event in *Erickson*, there was a terminating event in this case, which was the arrival of March 31, 2005, the date when, according to the marital settlement agreement, respondent's obligation to pay unallocated maintenance and child support terminated. Petitioner asserts that respondent, therefore, clearly had notice that his child support obligation would be modified after March 31, 2005, as evidenced by his decision to file a petition to modify child support on April 1, 2005. Petitioner acknowledges that respondent was granted permission to withdraw that petition with leave to refile and that he never did file an amended petition. However, she asserts that if this court finds that her May 2007 petition is controlling with regard to determining retroactivity, respondent, a party who owes retroactive child support would, in effect, be permitted to choose not to refile a petition in order to ensure that he or she will not be required to pay child support retroactive to that date. Therefore, petitioner asserts that because there was due notice of a modification no later than April 1, 2005, that is the latest date the trial court should have used in making the child support award retroactive.

¶ 22    Respondent contends that this court should not rely on *Duerr*, *Shoff*, or *Erickson* in addressing the retroactivity issue, because those cases are not only factually different from the instant case, but raised equitable concerns not present in this case, which required the trial courts to fashion a unique remedy. Respondent asserts that in this case petitioner chose to dismiss all of her pending actions in the domestic relations division in June 2006, including her petition to modify and increase unallocated child support, so that she could pursue a claim in the chancery division, where she thought she could find a judge more sympathetic to her cause. Respondent contends that once petitioner made that choice, she should not be permitted to subsequently fall back on that original petition in setting a retroactive date for child support.

¶ 23    Respondent also contends that under the language of the statute, a support award can be modified as to installments that accrue after a motion for modification is filed *and* due notice is given. Because petitioner dismissed her June 2, 2004 petition, it would be an error under the language of the statute to look to that date in awarding retroactive support, respondent argues. As for his own April 1, 2005 petition to set child support, respondent asserts that when he was granted permission to withdraw that petition in February 13, 2007, he was permitted but not required to file an amended petition. Therefore, respondent contends that because the actual date when both notice was given and the motion was filed was May 18, 2007, when petitioner filed her motion to set child support, the trial court did not err in making child support retroactive to that date.

¶ 24    The holding in *Shoff* suggests that in making a retroactive modification in child support under the statute, the operative factor is due notice to the opposing party that a modification is being sought. The *Duerr* holding further supports petitioner's argument that the date that the opposing party is notified that a modification in child support is being sought should be used in making a retroactive award, even if the petition setting that process in motion is subsequently dismissed and then refiled. However, in this case, unlike in *Duerr*, petitioner voluntarily dismissed her petition in the domestic relations division in order to file a section 2–1401 petition in the chancery division seeking to partially vacate the judgment of

dissolution of marriage. We agree with respondent that it would be inequitable to allow petitioner to dismiss her petition in order to pursue different relief in a different proceeding but then rely on that petition in setting a retroactive date for child support.

¶ 25 We do not agree, however, as respondent suggests and as the trial court found, that May 2007, when petitioner filed her petition to modify child support, is the appropriate retroactivity date for respondent's child support obligation. Here, as in *Erickson*, there was, under the terms of the parties' martial settlement agreement, an event that terminated respondent's obligation to provide unallocated support at the rate provided for in that agreement, namely the arrival of March 31, 2005. Respondent knew that his support obligation would be modified after that date, either by agreement of the parties or by court order. In anticipation of that modification, respondent filed a motion to set child support on April 1, 2005. Although respondent subsequently withdrew that motion, he clearly had notice that his support obligation would be modified after that date. As a result, we find, as this court did in *Erickson*, that the date of the terminating event is the appropriate date for ordering retroactive child support. Therefore, we modify the trial court's order and find that respondent's child support obligation is retroactive to April 1, 2005, the date that respondent's obligation to pay unallocated support terminated, rather than May 1, 2007.

¶ 26 B. Dismissal of Section 2–1401 Petition

¶ 27 Petitioner next asserts that the trial court erred in granting respondent's motion to dismiss her section 2–1401 petition pursuant to section 2–619 of the Code. This court's standard of review of a trial court's grant of a motion to dismiss pursuant to section 2–619 is *de novo*. *Parks v. Kownacki*, 193 Ill. 2d 164, 175 (2000). When ruling on a section 2–619 motion to dismiss, a court must interpret all pleadings and supporting documents in the light most favorable to the nonmoving party. *In re Chicago Flood Litigation*, 176 Ill. 2d 179, 189 (1997). The motion should be granted only if the plaintiff can prove no set of facts that would support a cause of action. *Chicago Teachers Union, Local 1 v. Board of Education of the City of Chicago*, 189 Ill. 2d 200, 206 (2000). However, "[a] dismissal order may be affirmed 'if it is justified in the law for any reason or ground appearing in the record regardless of whether the particular reasons given by the trial court, or its specific findings, are correct or sound.' " *BDO Seidman, LLP v. Harris*, 379 Ill. App. 3d 918, 923 (2008) (quoting *Natural Gas Pipeline Co. of America v. Phillips Petroleum Co.*, 163 Ill. App. 3d 136, 142 (1987)).

¶ 28 In this case, the trial court dismissed count I of petitioner's section 2–1401 petition, on June 27, 2008, and subsequently dismissed the remaining counts on February 27, 2009. Petitioner first contends the trial court erroneously relied on the principle of *res judicata* in dismissing count I of the petition. The doctrine of *res judicata* provides that a final judgment on the merits rendered by a court of competent jurisdiction bars any subsequent actions between the same parties or their privies on the same cause of action. *Rein v. David A. Noyes & Co.*, 172 Ill. 2d 325, 334 (1996). The doctrine extends not only to what was actually decided in the original action but also to matters which could have been decided in that suit. *Rein*, 172 Ill. 2d at 334. For the doctrine to apply, three requirements must be met: (1) there

was a final judgment on the merits rendered by a court of competent jurisdiction; (2) there was an identity of cause of action; and (3) there was an identity of parties or their privies. *Hudson v. City of Chicago*, 228 Ill. 2d 462, 467 (2008).

¶ 29    Here, petitioner contends, there was no identity of causes of action because her second petition for rule to show cause presented a fundamentally different claim than her section 2–1401 petition and that there was no final judgment on the merits of her second petition for rule to show cause because that petition was withdrawn, and therefore, there was no adjudication on the claims raised in her section 2–1401 petition. We agree with petitioner that *res judicata* is not a proper grounds for dismissal; however, because we find that the trial court's dismissal of the section 2–1401 petition was not based on the application of the doctrine of *res judicata*, but rather, on the two-year statute of limitations, we affirm the trial court.

¶ 30    Section 2–1401 of the Code provides a statutory mechanism by which a final order or judgment may be vacated or modified more than 30 days after its entry. 735 ILCS 5/2–1401 (West 2008). A petition brought under this provision is not a continuation of the original proceeding, but a commencement of a new cause of action with the purpose of bringing to the attention of the circuit court facts not of record which, if known by the court at the time judgment was entered, would have prevented its rendition. To be entitled to relief under section 2–1401, the petitioner must affirmatively set forth specific factual allegations supporting each of the following elements: (1) the existence of a meritorious claim or defense; (2) due diligence in presenting that claim or defense in the original action; and (3) due diligence in presenting the section 2–1401 petition. *Gonzalez v. Profile Sanding Equipment, Inc.*, 333 Ill. App. 3d 680, 686 (2002). When a trial court enters a judgment on the pleadings or a dismissal in a section 2–1401 proceedings, our review is *de novo*. *People v. Vincent*, 226 Ill. 2d 1, 18 (2007).

¶ 31    A section 2–1401 petition must be filed within two years of entry of the relevant final judgment, but time during which the ground for relief is fraudulently concealed is excluded from the two-year period. 735 ILCS 5/2–1401(c) (West 2008). In order to show fraudulent misrepresentation, plaintiff must show (1) a false statement of a material fact; (2) the party making the statement knew or believed it to be untrue; (3) the recipient of the statement had a right to rely on it and did so; (4) the statement was made for the purpose of inducing the recipient to act; and (5) injury from the recipient's reliance on the statement. *In re Marriage of Ealy*, 269 Ill. App. 3d 971, 973 (1995).

¶ 32    Although petitioner contends that the trial court's dismissal of her section 2–1401 petition was erroneously based on the doctrine of *res judicata,* the record indicates otherwise. During the hearing on respondent's motion to dismiss petitioner's section 2–1401 petition, the trial court stated that it was "time barred because [it] was filed two years after the Second Amended Petition for Rule [to Show Cause] *** and on essentially the same allegations." This indicates that the dismissal was based on a statute of limitations violation. Petitioner contends, however, that even if the statute of limitations, rather than *res judicata,* was the basis for the trial court's dismissal of her petition, the trial court erred because the statute of limitations was tolled by respondent's fraudulent conduct. Namely, petitioner asserts that

respondent made false statements of material fact and wilfully failed to disclose material facts upon which she relied in executing the marital settlement agreement. For instance, she alleged that respondent failed to disclose a 401(k) retirement account with the Affiliated Managers Group and represented prior to judgment that he was and would continue to fully disclose his income and assets but has failed to do so and has engaged in a course of action to fraudulently conceal his assets. Petitioner contends that she timely filed her section 2–1401 petition by filing it within two years of learning about respondent's fraud. We disagree.

¶ 33    Petitioner filed her second petition for rule to show cause on June 2, 2004, alleging that respondent failed to make a full and complete disclosure of his income from all sources in an effort to evade his full obligation of unallocated family support. Therefore, it is clear that she was aware of a possible claim on that date, but still waited until November 2006, more than two years later, to file her section 2–1401 claim. The trial court found that because the allegations in both pleadings were the same, the petitioner had knowledge of a possible claim more than two years earlier and, therefore, was time barred. Even if the statute of limitations was tolled as a result of respondent's fraud, it is clear from the June 2, 2004 motion that petitioner had knowledge of a possible basis for vacating the judgment but waited more than two years to file that petition. Therefore, we find that because petitioner failed to timely file her section 2–1401 petition, the trial court did not err in dismissing it.

¶ 34                               C. Attorney Fee Award

¶ 35    Respondent appeals from the trial court's order awarding petitioner $127,000 in attorney fees. Respondent contends that under principles of equity, he should not be required to pay all of petitioner's attorney fees, because they were incurred in a postdecree proceeding that was commenced several years after the judgment for dissolution of marriage was entered and resulted from petitioner being overly litigious and raising issues that had no merit under the terms of the parties' marital settlement agreement.

¶ 36    Generally, it is the responsibility of the party who incurred attorney fees to pay those fees. *In re Marriage of Nesbitt*, 377 Ill. App. 3d 649, 656 (2007). However, section 508(a) of the Illinois Marriage and Dissolution of Marriage Act (Act) allows for an award of attorney fees where one party lacks the financial resources and the other party has the ability to pay. 750 ILCS 5/508(a) (West 2008). When determining an award of attorney fees, the allocation of assets and liabilities, maintenance and the relative earning abilities of the parties should be considered. *In re Marriage of Suriano*, 324 Ill. App. 3d 839, 852 (2001). The party seeking an award of attorney fees must establish an inability to pay and the other spouse's ability to do so. *In re Marriage of Schneider*, 214 Ill. 2d 152, 174 (2005). Financial inability exists where requiring payment of fees would strip that party of his means of support or undermine his financial stability. *Schneider*, 214 Ill. 2d at 174. There is no prohibition against awarding attorney fees to an unsuccessful litigant, although good faith of litigants is to be considered. *In re Marriage of Pylawka*, 277 Ill. App. 3d 728, 735 (1996). The allowance of attorney fees and the amount awarded are matters within the sound discretion of the circuit court and will not be reversed on appeal absent an abuse of discretion. *Schneider*, 214 Ill. 2d at 173.

¶ 37    Section 508(a) of the Act addresses the types of proceedings in which an award of attorney fees may be made, stating, in relevant part, that:

"Awards may be made in connection with the following:

(1) The maintenance or defense of any proceeding under this Act.

(2) The enforcement or modification of any order or judgment under this Act.

(3) The defense of an appeal of any order or judgment under this Act, including the defense of appeals of post-judgment orders.

(3.1) The prosecution of any claim on appeal (if the prosecuting party has substantially prevailed).

(4) The maintenance or defense of a petition brought under Section 2–1401 of the Code of Civil Procedure seeking relief from a final order of judgment under this Act.

(5) The costs and legal services of an attorney rendered in preparation of the commencement of the proceeding brought under this Act.

(6) Ancillary litigation incident to, or reasonably connected with, a proceeding under this Act." 750 ILCS 5/508(a) (West 2008).

¶ 38    The proceedings involved in this appeal, a section 2–1401 petition and a petition to modify child support award are clearly the types of proceedings for which an award of attorney fees may be granted under the Act. Further, we note that section 508 of the Act, addressing the awarding of interim attorney fees and costs in prejudgment dissolution proceedings, was amended effective January 1, 2010. In doing so, the legislature did not adopt the view expressed by respondent that attorney fees should not be awarded in a postdecree petition or that a court should take into consideration the fact that a petition is postdecree in deciding whether and to what extent attorney fees should be awarded. Therefore, we reject respondent's argument that the trial court erred in awarding attorney fees to petitioner because the proceedings were postdecree and occurred several years after the judgment for dissolution of marriage was entered, as such an award is contemplated by the Act.

¶ 39    As to respondent's argument that the trial court's attorney fee award fails to take petitioner's litigiousness into consideration, it should be noted that during the hearing the trial judge pointed out that respondent had filed a motion for sanctions under Illinois Supreme Court Rule 137 (eff. Feb. 1, 1994) arguing that petitioner and her counsel failed to conduct reasonable investigation before pursuing postdecree relief and that she had found no grounds for sanctions. Further, although petitioner did not succeed on her section 2–1401 petition, there is no evidence that she acted in bad faith in bringing the petition.

¶ 40    As to the parties' respective abilities to pay the attorney fees, the record shows a wide disparity in their financial resources. According to the parties' disclosure statements, respondent had a gross income of $1,800,000 in 2006 while petitioner earned no income and had living expenses of $17,000 per month, equal to the amount she was awarded in child support. There is also a disparity in the ability of the parties to generate income. Although, as respondent notes, petitioner is a licensed attorney, she was a stay-at-home mother during

-13-

the marriage and since the dissolution judgment was entered. There is no evidence that respondent's economic stability will be undermined as a result of the award of attorney fees to petitioner. Therefore, we find that the trial court did not abuse its discretion in awarding petitioner attorney fees.

¶ 41 Finally, petitioner argues in a petition for rehearing that counts II through VI of her section 2–1401 petition cannot be dismissed on statute of limitations grounds because they are postdecree, equitable and common law claims seeking to enforce a child support order, and pursuant to section 12–108 of the Illinois Code of Civil Procedure, "[c]hild support judgments, including those arising by operation of law, may be enforced at any time." 735 ILCS 5/12–108 (West 2008). This contention was not raised in petitioner's brief, and therefore, pursuant to Supreme Court Rule 341(h)(7), it is forfeited. See Ill. S. Ct. R. 341(h)(7) (eff. Sept. 1, 2006) ("[p]oints not argued are waived and shall not be raised in the reply brief, in oral argument, or on petition for rehearing").

¶ 42         III. CONCLUSION

¶ 43 For the foregoing reasons, we modify the trial court's order to make the modified child support retroactive to April 1, 2005, and we affirm the remaining trial court orders.

¶ 44 Modified in part and affirmed in part.

-14-