2015 IL App (1st) 133382

FIRST DIVISION
MARCH 30, 2015

No. 1-13-3382

| | | |
|---|---|---|
| MARY CAVITT, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | No. 95 D 79903 |
| | ) | |
| STEVEN REPEL, | ) | Honorable |
| | ) | Pamela E. Loza, |
| Defendant-Appellee. | ) | Judge Presiding. |

JUSTICE CUNNINGHAM delivered the judgment of the court, with opinion.
Presiding Justice Delort and Justice Harris concurred in the judgment and opinion.

**OPINION**

¶ 1     This appeal arises from the May 18, 2011 order entered by the circuit court of Cook

County, which granted the motion of defendant Steven Repel[1] (Steven) to dismiss a "petition to

void" filed by plaintiff Mary Cavitt (Mary) to vacate a 1997 judgment for child support, pursuant

to section 2-1401 of the Illinois Code of Civil Procedure (the Code) (735 ILCS 5/2-1401 (West

2010)).  This appeal also arises from the circuit court's February 5, 2013 order imposing attorney

fees and costs upon Mary.  On appeal, Mary argues that: (1) the circuit court erred in dismissing

her section 2-1401 petition without conducting an evidentiary hearing; and (2) the circuit court

---

[1] Steven Repel is also known as Steven Ludington.

erred in imposing a total of $31,977.83 in attorney fees and costs upon her. For the following reasons, we affirm the judgment of the circuit court of Cook County.

¶ 2                                BACKGROUND

¶ 3     The procedural history in this case is extensive, and only those facts relevant to the issues raised in this appeal are summarized below. Steven and Mary were never married to each other, but are the biological parents of a son named Noah, who was born on July 8, 1995. On September 21, 1995, Mary, a practicing dentist who was represented by attorney Nathanial Lawrence (Attorney Lawrence), filed a "petition for parentage and support," seeking to establish paternity and to resolve child custody and support issues against Steven. On October 24, 1995, a summons was served by process server upon Steven at his then residence at 1852 W. Thomas Street in Chicago, Illinois.

¶ 4     On December 1, 1995, Steven filed, and the circuit court granted, an "application to proceed under Supreme Court Rule 298" (Rule 298 application) (Ill. S. Ct. R. 298 (eff. Nov. 1, 2003)) (formerly, Ill. Rev. Stat. 1991, ch. 110A, ¶ 298) for the waiver of court fees, noting that he was unemployed and had an "undetermined" amount of expected future income, that he owned no interest in real estate, and that he had a "nominal" and "unknown" value in personal property. On December 19, 1995, Steven, acting *pro se*, filed an appearance before the court *in forma pauperis*.

¶ 5     On January 5, 1996, Steven married Mieko Fujii (Mieko).

¶ 6     On March 8, 1996, attorney Lawrence Lusk (Attorney Lusk) filed an appearance before the court as substitute counsel for Mary.

¶ 7    On April 12, 1996, the circuit court[2] entered an order requiring the parties to "exchange financial records sufficient to determine income since January 1st, 1995 to present."

¶ 8    On May 9, 1996, attorney Mary Beth Powers (Attorney Powers) filed her appearance before the court as counsel for Mary.

¶ 9    On July 24, 1996, Mary, through Attorney Powers, filed written discovery against Steven for the disclosure and production of documents relating to Steven's assets and income.  In August 13, 1996 Rule 13.3(a) and (b) (Cook Co. Cir. R. (eff. Jan. 1, 1996) financial disclosure statements, Steven represented that he was self-employed; that his total gross monthly income was $2,008; that he earned a net monthly income of $1,007 after tax deductions; that he had living expenses of $700 per month; that he owed creditors about $187,000; that his student loans were in "default"; that he owned no investment accounts or securities; that he owned 50% of "equitable interest only" in business entity "S+G Partners"; that real estate property at 1852 W. Thomas Street in Chicago was transferred to S+G Partners in 1992 and then to "William & Mary Repel" in 1993; that he had no health insurance coverage; and that he owned about $5,000 in miscellaneous personal property.

¶ 10   On January 13, 1997, the circuit court[3] entered a "Judgment for Parentage" (1997 judgment), which incorporated the parties' September 13, 1996 parental settlement agreement (the settlement agreement).  The September 13, 1996 settlement agreement, which was drafted by Mary's counsel, Attorney Powers, provided that the parties agreed that Mary shall have sole custody of Noah, subject to reasonable visitation rights by Steven; that Steven shall pay Mary $500 per month in child support; that the parties acknowledged that Steven was unable to

---

[2] Presided over by Judge G.L. Lott (deceased).
[3] Presided over by Judge David Delgado (retired).

contribute to the day care of Noah, but "the issues of day care shall be reserved until further order of Court"; that Steven shall tender his income tax returns to Mary each year; that Mary shall maintain health insurance for Noah until such time as Steven is able to secure a policy of coverage through employment; that Steven shall maintain a life insurance policy for the benefit of Noah; and that the parties shall pay for Noah's college expenses pursuant to section 513 of the Illinois Marriage and Dissolution of Marriage Act (750 ILCS 5/513 (West 1996)).

¶ 11    On May 5, 2000, Steven and Mieko's marriage ended in divorce. That marriage produced no children. The judgment for dissolution of marriage (case No. 00 D 7309), which incorporated Steven and Mieko's marriage settlement agreement, stated that Steven was employed as an attorney at a Chicago law firm with an annual income of $100,000; that Mieko had an income of $30,000 per year; that Steven shall pay Mieko maintenance of $2,500 per month for 36 months beginning on June 1, 2000; that Steven shall pay Mieko's health insurance coverage for one year; that Steven shall maintain a life insurance policy for the benefit of Mieko; that Mieko shall receive 50% of the value of Steven's IRA and SEP plans; that Mieko shall receive certain mutual funds from Steven; that Mieko shall receive 100% interests in real estate properties 543 Sheridan Road in Evanston, 2838-40 N. Albany Avenue in Chicago, and 1937 N. Damen Avenue in Chicago; that Mieko shall receive $72,000 in cash as property settlement from Steven; and that Mieko shall receive 50% of any and all cash payments from Steven's share of the partnership Berg, Repel & Berg.

¶ 12    On September 13, 2000, Mary, represented by new counsel Robert Schmit (Attorney Schmit), filed a "petition for modification of child support" (petition to modify), arguing that Steven's income and assets had increased substantially since the entry of the 1997 judgment. The petition to modify sought to increase Steven's monthly child support obligations; to obtain

reimbursement from Steven for Noah's medical insurance; to require Steven to contribute to the day care costs of Noah; and to restrict Steven's visitation rights.

¶ 13    On November 1, 2000, Steven, acting *pro se*, filed a motion to modify his monthly child support payments to an amount less than $500, on the basis that he had lost his job at a law firm in September 2000 and that he had no income to continue paying the monthly support obligation as it existed.

¶ 14    On February 28, 2001, attorney Fred Lerner (Attorney Lerner) filed an appearance before the court as substitute counsel for Mary.

¶ 15    During the pendency of Mary's September 13, 2000 petition to modify, Mary engaged in extensive discovery—including deposing Steven, Mieko, Steven's former law partner, Steven's father, Steven's friend, Steven's second wife (Sarah Ludington) (Sarah), and Sarah's tenant, as well as issuing dozens of subpoenas to these individuals and Steven's former clients, his in-laws, and various banks and business entities.

¶ 16    On July 16, 2004, Mary again obtained new counsel and attorney Regina Scannicchio (Attorney Scannicchio) was granted leave of court to file her appearance as substitute counsel.

¶ 17    On January 26, 2005, the circuit court entered an order limiting Mary's discovery efforts to the date of the filing of her September 13, 2000 petition to modify, and specifically limiting Mary's request of production of documents from Sarah to the date of October 6, 2001.

¶ 18    On June 20, 2005, Mary filed a motion to join Sarah,[4] Steven's second wife, as a party to the litigation, alleging that Steven had demonstrated "a comprehensive pattern and practice of diverting, shielding and/or disguising his true income by, in part, jointly investing personal

---

[4] Only the first two pages of the motion to join Sarah (No. C02522-23) can be located in the record and it is unclear whether a complete copy of this pleading has been included in the 54-volume record.

and/or marital income and assets with [Sarah]; directing that income and/or gains derived from such joint investments be made payable to [Sarah] rather than to himself; granting and/or transferring income and/or assets to [Sarah]; and/or otherwise directing that income due to him flow instead to [Sarah]." The motion to join Sarah also alleged that Sarah had "diverted monies from her joint account with [Steven] to accounts jointly held between herself and other parties."

¶ 19    On August 26, 2005, the circuit court[5] granted Mary's motion to join Sarah as a necessary party to the litigation in order "to reach a decision which will protect the interest of those who are before the court" and "to enable the court to make a complete determination of the controversy."

¶ 20    On August 18, 2006, Mary, through new counsel Joshua Jackson of Schiller, DuCanto and Fleck (Attorney Jackson), filed a motion to join Mieko, Steven's ex-wife, as a party to the litigation, alleging that Steven attempted to shield his assets by transferring most of his assets to Mieko during their May 2000 divorce; and that both Steven and Mieko worked together to shield Steven's true income from the court—including proceeds from the sale of property located at 2838-40 N. Albany Avenue in Chicago, rental income and refinance funds from property located at 543 Sheridan Road in Evanston, and rental income from property located at 1937 N. Damen Avenue in Chicago. On March 4, 2008, the circuit court[6] denied Mary's motion to join Mieko as a party.

¶ 21    On October 2, 2007, attorney Nicholas Stein (Attorney Stein) entered his appearance before the court as substitute counsel for Mary. On October 14, 2008, attorney Herbert

---

[5] Presided over by Judge Timothy Murphy.
[6] Presided over by Judge Patricia Logue.

Glieberman (Attorney Glieberman) was granted leave of court to file his appearance as additional counsel for Mary.

¶ 22    On October 15, 2008, on the eve of trial, Mary, through Attorney Stein, voluntarily dismissed her September 13, 2000 petition to modify pursuant to section 2-1009 of the Code (735 ILCS 5/2-1009 (West 2008)).

¶ 23    On June 29, 2009, Attorney Glieberman, on behalf of Mary, filed a "petition for modification of child support and other relief" (2009 petition to modify), seeking retroactive child support based on the amount of Steven's past earnings for each year subsequent to the entry of the 1997 judgment; child support in the sum of $3,000 per month going forward; 50% of all monies Mary allegedly paid on behalf of Noah for medical attention, schooling and other needs in the amount of $286,167.76; and proof of the existence of Steven's life insurance policy in the value of $100,000 designating Mary as a trustee.  The 2009 petition to modify alleged that since the entry of the 1997 judgment, there had been no modification to increase the amount of monthly child support, Steven's income had substantially increased to in excess of $150,000 per year, and Steven had "secreted" funds with Mieko and Sarah.  The 2009 petition to modify did not name either Mieko or Sarah as parties, and did not reference the original September 2000 petition to modify that had previously been voluntarily dismissed by Mary on October 15, 2008. The 2009 petition to modify also made no allegations that Steven had failed to pay the $500 monthly child support since the entry of the 1997 judgment.

¶ 24    On January 26, 2010, Mary, who was represented by new counsel Howard Schusteff (Attorney Schusteff), filed an "amended petition for modification of child support and other relief" (2010 amended petition to modify), against both Steven and Sarah.  However, Sarah was not served with process.  The 2010 amended petition to modify again sought retroactive child

support based on the amount of Steven's past earnings for each year subsequent to the entry of the 1997 judgment, and included all of the same allegations as those contained in the 2009 petition to modify. The 2010 amended petition to modify further alleged that Steven had purchased a Porsche Cayman Coupe automobile in 2007, that he had been referenced in a published article by Andrew Burr which stated that Steven was the property owner of a 50,000-square-foot flex facility on West Kinzie Street in Chicago and the property owner of a 26,000-square-foot building for which he paid $350,000 to install a geothermal heating system. The 2010 amended petition to modify further alleged one count against Sarah, alleging that she "aided and abetted" Steven, who "fraudulently diverted, shielded, and/or disguised income that this [court] must consider so as to be able to determine 'net income' upon which to base the minimum duty of support owed by Steven in support of Noah"; that Steven and Sarah jointly applied for a loan to purchase a $700,000 home in Highland Park in November 2004 and that Steven quitclaimed his entire interest in the Highland Park property to Sarah shortly thereafter; that Sarah is the landlord of Steven's law office, for which Steven paid up to $3,000 per month in rent; that Steven wrote checks to Sarah for the "advance rent" on his office space in 2005; that he wrote several thousand dollars in checks from his Interest on Lawyers Trust Accounts (IOLTA) account to Sarah in 2005; that he transferred $245,145 to Sarah from December 2003 to June 2004; and that Sarah should be ordered to provide a complete accounting of any assets, funds, and interest that she had received from Steven. The 2010 amended petition to modify also did not reference the original September 2000 petition to modify that had previously been voluntarily dismissed by Mary on October 15, 2008.

¶ 25    On June 11, 2010, Steven, by his counsel Steven Verr (Attorney Verr), filed a motion to dismiss Mary's 2010 amended petition to modify, arguing, *inter alia*, that Illinois statutory law

barred all claims of retroactive child support and expenses predating the filing date of the petition. On July 27, 2010, Attorney Schusteff filed, on behalf of Mary, a response to Steven's motion to dismiss the 2010 amended petition to modify. On August 24, 2010, counsel for Steven filed a reply in support of Steven's motion to dismiss the 2010 amended petition to modify.

¶ 26 On September 29, 2010, almost 14 years after the entry of the 1997 judgment, Mary filed a "petition to void judgment for parentage" (petition to void) the 1997 judgment, on the basis of fraud. The petition to void alleged that, unbeknownst to Mary, at the time the parties entered into the 1996 settlement agreement, Steven was a partner of the law firm known as Berg, Repel & Berg; Steven had been gainfully employed since 1986 and was a partner of the law firm since November 1992; Steven obtained a $206,250 mortgage on the property located at 1852 W. Thomas Street and obtained a $41,000 home equity loan in December 1996, which was recorded five days before the entry of the 1997 judgment; Steven quitclaimed property located at 1937 N. Damen Avenue in Chicago to his then-wife, Mieko, in December 1996; and that Steven conveyed his 50% interest in the 1937 N. Damen Avenue property to Mieko under their divorce decree in May 2000. The petition to void further alleged that, in light of Steven's "intentional marital misrepresentations" and Mary's reasonable reliance upon them "which he knew would cause Mary to accept a settlement agreement which provided for significantly less child support obligations," the 1997 judgment (which had incorporated the settlement agreement) must be vacated or modified. Thereafter, the circuit court ruled that Mary's "petition to void" was actually a petition filed under section 2-1401 of the Code (735 ILCS 5/2-1401 (West 2010)).

¶ 27 On November 22, 2010, Steven filed a "request for the admission of fact" (requests for admission) pursuant to Illinois Supreme Court Rule 216 (eff. May 30, 3008). On December 3, 2010, Mary, through Attorney Schusteff, filed a motion to strike and dismiss Steven's requests

for admission, arguing that the requests were excessive, abusive, and propounded to delay his response to her section 2-1401 petition. On January 3, 2011, the circuit court[7] entered an order directing Steven to limit his requests for admission to a total of 50 requests, and identifying each of the requests that Mary must answer. On January 10, 2011, Mary filed answers to Steven's requests for admission, objecting to most of the requests as vague, conclusory, compound, irrelevant, and lacking specificity. On January 31, 2011, Steven filed a motion to strike Mary's answers to his request for admission (motion to strike answers), arguing that the answers lacked truthful foundation, were belied by the record, and were otherwise improper, and requesting that he be awarded attorney fees and costs pursuant to Illinois Supreme Court Rule 219(b) (eff. July 1, 2002).

¶ 28   On March 14, 2011, a hearing on Steven's motion to strike answers was held, during which Mary's counsel, Attorney Schusteff changed 12 of Mary's previous answers from "denials" to "admissions." Specifically, under request No. 60, Mary admitted that, prior to September 28, 2008, she had indeed previously accused Steven of "fraud" with respect to the entry of the 1997 judgment.

¶ 29   On April 18, 2011, Steven filed a motion to dismiss Mary's section 2-1401 petition, arguing, *inter alia*, that Mary was time barred from alleging fraudulent concealment against Steven, where she had judicially admitted that she was aware of the supposed "fraud" more than two years prior to the filing of the section 2-1401 petition.

¶ 30   On May 18, 2011, following a hearing on Steven's motion to dismiss the section 2-1401 petition, the circuit court[8] dismissed the section 2-1401 petition with prejudice, granted Steven

---

[7] Presided over by Judge Pamela Loza.
[8] Presided over by Judge Pamela Loza.

leave to file a motion for costs, and noted that Mary's 2010 amended petition to modify was still pending before the court and which the court would "allow." The court noted that there was "no just reason to delay enforcement of this order."

¶ 31 On June 3, 2011, Mary filed a motion to reconsider the court's May 18, 2011 ruling. In an order dated November 7, 2011, the circuit court noted that Sarah was not a third party to Mary's pending 2010 amended petition to modify.

¶ 32 On February 22, 2012, the circuit court[9] denied Mary's motion to reconsider the court's May 18, 2011 ruling, finding that since the inception of the case, Mary had "retained the services of at least eleven (11) attorneys and ha[d] issued at least 73 subpoenas related to [Steven's] assets in this cause and nine depositions and then voluntarily nonsuited her pending [original September 13, 2000 petition to modify], on the eve of trial, October 15, 2008." The circuit court further found that Mary admitted in her answers to Steven's requests for admission that she had accused Steven, Mieko, and Sarah of fraud prior to September 28, 2008. The court found that, to date, Mary "has made many allegations and cast many aspersions but she has found no definite facts of fraudulent concealment, shown by clear and convincing evidence"; and that there was no evidence that Steven "intentionally misstated or concealed a material fact which [he] had a duty to disclose and that [Mary] detrimentally [relied] on [Steven's] statement or conduct." On that same day, February 22, 2012, the circuit court entered a separate order directing Steven to pay an increased amount of $765 in child support per month.

¶ 33 On March 12, 2012, Steven filed a petition for attorney fees and costs (petition for attorney fees) along with relevant exhibits, pursuant to sections 508(a) and (b) of the Illinois Marriage and Dissolution of Marriage Act (750 ILCS 5/508(a), (b) (West 2010)), as well as

---

[9] Presided over by Judge Pamela Loza.

under Illinois Supreme Court Rule 137 (eff. Feb. 1, 1994), for defense against the section 2-1401 petition. The petition for attorney fees incorporated by reference Steven's May 31, 2011 "Motion for Attorney's Fees or Expenses on Refusal to Admit and Motion for Statutory Costs," with regard to Mary's evasive answers to Steven's requests for admission. The petition for attorney fees sought a total of $42,737.04 in fees and costs.

¶ 34   On March 19, 2012, Mary filed a premature notice of appeal, appealing from the circuit court's May 18, 2011 order dismissing with prejudice the section 2-1401 petition and the court's February 22, 2012 order denying her motion to reconsider the May 18, 2011 ruling. On May 31, 2012, this court dismissed Mary's appeal as premature, and remanded the case to the circuit court "for adjudication of [Steven's] Petition for Attorney's Fees, Motion for Statutory Costs, and Motion for Attorney's Fees for Expenses on Refusal to Admit."

¶ 35   On November 27, 2012, on remand, a hearing was held on Steven's petition for attorney fees. Evidence presented at the hearing included the testimony of Steven's counsel, Attorney Verr, regarding the expenditure of his time and effort in defending against Mary's section 2-1401 petition and regarding litigation over Steven's requests for admission.

¶ 36   On February 5, 2013, the circuit court[10] entered an order, pursuant to Illinois Supreme Court Rule 219(b) (eff. July 1, 2002) and section 508(b) of the Illinois Marriage and Dissolution of Marriage Act (750 ILCS 5/508(b) (West 2012)), granting attorney fees and costs in the amount of $31,977.83. The circuit court specifically found that there was "no just cause" for Mary's "refusal to answer [Steven's] Request to Produce which was properly propounded upon her"; that Steven's requests for admission were "substantive"; that Steven was entitled to fees as a result of Mary's either refusing to answer or changing her responses in answer to Steven's

---

[10] Presided over by Judge Pamela Loza.

requests for admission; that Mary's action in failing to properly answer the requests for admission was "without compelling cause or justification and therefore [Steven] [was] entitled to reasonable and necessary fees"; that Mary "deliberately prevaricated" her answers in the requests for admission in open court on March 14, 2011, when "twelve (12) of the fifty (50) answers were changed from 'deny' to 'admit' which needlessly increased the cost of litigation"; and that the hourly rate of $350 charged by Steven's counsel, Attorney Verr, was "fair and reasonable given the complexity of the issues" and Attorney Verr had been licensed to practice law in Illinois since 1986.

¶ 37    On February 11, 2013, Mary, by Attorney Schusteff, filed a motion to reconsider[11] the court's February 5, 2013 order.  On October 31, 2013, following a hearing on Mary's motion to reconsider the court's February 5, 2013 order, the circuit court[12] denied the motion by finding Attorney Verr's fees to be fair and reasonable; by finding that it had actually reduced one-quarter of the fees originally requested by Attorney Verr and the court "gave him no travel time, which he [was] entitled to"; and by finding that Mary should take some responsibility for the fact that the litigation had been ongoing since 1995.

¶ 38    On November 5, 2013, Mary filed a timely notice of appeal.

¶ 39                                    ANALYSIS

¶ 40    We determine the following issues on appeal: (1) whether the circuit court erred in dismissing with prejudice Mary's section 2-1401 petition, which sought to vacate the 1997

---

[11] Mary's pleading was entitled a "Motion to Vacate."  However, the circuit court later characterized the "Motion to Vacate" as a "Motion for Reconsideration," to which Mary's counsel raised no objection.
[12] Presided over by Judge Pamela Loza.

judgment regarding child support; and (2) whether the circuit court erred in imposing a total of $31,977.83 in attorney fees and costs upon Mary.

¶ 41    This court has jurisdiction over this appeal pursuant to Illinois Supreme Court Rule 304(b)(3) (eff. Jan. 1, 2006), which makes appealable, without the necessity of a special finding by the court, judgments and orders "granting or denying any of the relief prayed in a petition under section 2-1401 of the Code of Civil Procedure."  Ill. S. Ct. R. 304(b)(3) (eff. Jan. 1, 2006).

¶ 42    We first determine whether the circuit court erred in dismissing with prejudice Mary's section 2-1401 petition, which sought to "void" the original 1997 judgment on the basis of fraud. A circuit court's judgment on the pleadings or a dismissal of a section 2-1401 proceeding is reviewed *de novo*.  *In re Marriage of Streur*, 2011 IL App (1st) 082326, ¶ 30.

¶ 43    Mary argues *pro se* on appeal that the circuit court erred in dismissing with prejudice, her section 2-1401 petition, where the petition was well-pled in alleging that, during the time leading up to the parties' execution of the September 13, 1996 settlement agreement, which was then incorporated into the 1997 judgment, Steven had falsely represented to Mary and the court that he had limited income and assets, but had in fact fraudulently concealed other assets and property that he owned.  Mary alleged that the section 2-1401 petition also made well-pled allegations that she was misled by Steven's misrepresentations and was thereby fraudulently induced to agree to the terms of the settlement agreement for child support reflecting his purported limited income and assets.  Mary further argues that she was entitled to an evidentiary hearing, rather than just oral arguments as the circuit court held, on her well-pled section 2-1401 petition in order to "fully vet" the issue of "due diligence."  Mary further contends that, even if an evidentiary hearing was not required, the circuit court erred in finding that she was not duly diligent in filing the section 2-1401 petition.

¶ 44     Steven counters that the circuit court properly dismissed Mary's section 2-1401 petition, where it was filed outside the statute of limitations and Mary has failed to plead, and could never show, that she exercised due diligence in filing the section 2-1401 petition.  Specifically, Steven argues that the 1997 judgment was not "void" as Mary claims, because the circuit court possessed both personal and subject matter jurisdiction over the child support matter.  He further contends that Mary was not entitled to a full evidentiary hearing on her section 2-1401 petition, and points out that Mary was afforded a full and fair opportunity to challenge Steven's motion to dismiss her petition.  Steven contends that the section 2-1401 petition was properly dismissed based on Mary's own judicial admissions that she had known of the alleged "fraud" more than two years prior to the filing of her dilatory section 2-1401 petition.  He further argues that Mary had been litigating her "fraud" conspiracy theories against Steven for over a decade before she filed the instant section 2-1401 petition; that she had long used extensive discovery and litigation in an attempt to substantiate her spurious claims; that the filing of the instant section 2-1401 petition was a "sham" used to bypass the statutory bar against seeking retroactive child support; and that all of the exhibits used to support the claims in her section 2-1401 petition were either filed in the record of this case for a previous petition to modify child support or were available in the Cook County recorder of deeds office more than six years prior to the filing date of the section 2-1401 petition.

¶ 45     Section 2-1401 of the Code provides a statutory mechanism by which a final order or judgment may be vacated or modified more than 30 days after its entry.  735 ILCS 5/2-1401 (West 2010).  A petition brought under this provision is not a continuation of the original proceeding, but a commencement of a new cause of action, subject to the rules of civil procedure, with the purpose of bringing to the attention of the circuit court facts not of record

which, if known by the court at the time judgment was entered, would have prevented its rendition. *In re Marriage of Streur*, 2011 IL App (1st) 082326, ¶ 30; *In re Marriage of Buck*, 318 Ill. App. 3d 489, 493 (2000). A section 2-1401 petitioner bears the burden to allege and prove facts sufficient to justify relief. *In re Marriage of Buck*, 318 Ill. App. 3d at 493. "Where a section 2-1401 petition fails to state a cause of action or shows on its face that the petitioner is not entitled to relief, the petition is subject to a motion to dismiss." *Id.* A motion to dismiss a section 2-1401 petition is to be considered in the same manner as a civil complaint, and admits all well-pleaded facts. *Id.* A motion to dismiss is granted where it clearly appears that no set of facts could ever be proved that would entitle the plaintiff to recover. *Id.*

¶ 46    To be entitled to relief under section 2-1401, the petitioner must affirmatively set forth specific factual allegations supporting each of the following elements: (1) the existence of a meritorious claim or defense; (2) due diligence in presenting that claim or defense in the original action; and (3) due diligence in presenting the section 2-1401 petition. *In re Marriage of Streur*, 2011 IL App (1st) 082326, ¶ 30. Specifically, to set aside a judgment based on newly discovered evidence, the evidence must be such as could not reasonably have been discovered at the time of or prior to the entry of the judgment. *In re Marriage of Buck*, 318 Ill. App. 3d at 493. A section 2-1401 petition must be filed within two years of entry of the relevant final judgment, but time during which the ground for relief is fraudulently concealed is excluded from the two-year period. 735 ILCS 5/2-1401(c) (West 2010). To prove fraudulent concealment in a section 2-1401 petition, the petitioner must prove by clear and convincing evidence that the respondent intentionally misstated or concealed a material fact which the respondent had a duty to disclose and that the petitioner detrimentally relied on the respondent's statement or conduct. *In re Marriage of Himmel*, 285 Ill. App. 3d 145, 148 (1996).

¶ 47    In the instant case, Mary filed her section 2-1401 petition on September 29, 2010, over 13 years after the entry of the 1997 judgment, seeking to vacate the 1997 judgment on the basis of fraud.  The petition alleged that, unbeknownst to Mary, at the time the parties entered into the 1996 settlement agreement—which was later incorporated into the 1997 judgment—Steven was a partner of the law firm Berg, Repel & Berg; Steven had been gainfully employed since 1986 and was partner of the law firm since November 1992; Steven obtained a $206,250 mortgage on the Chicago property located at 1852 W. Thomas Street, as well as a $41,000 home equity loan, on December 4, 1996; the $41,000 home equity loan was recorded with the Cook County recorder five days before the entry of the 1997 judgment; Steven quitclaimed property located at 1937 N. Damen Avenue in Chicago to his then-wife, Mieko, in December 1996, which was not recorded until February 20, 1998; Steven regained ownership of the Damen Avenue property after the 1997 judgment and before May 2000; and Steven conveyed his 50% interest in the Damen Avenue property to Mieko under their divorce decree in May 2000.  The petition further alleged, without setting forth specific factual allegations, that in light of Steven's "intentional marital misrepresentations" and Mary's reasonable reliance upon them "which he knew would cause Mary to accept a settlement agreement which provided for significantly less child support obligations, or omit, altogether, obligations which would otherwise have been agreed upon," the 1997 judgment must be vacated or modified.

¶ 48    On April 18, 2011, Steven filed a section 2-619 motion to dismiss the section 2-1401 petition, arguing, *inter alia*, that Mary was time-barred from alleging fraudulent concealment against him, where she had judicially admitted, as a result of her answers to his requests for admission, that she was aware of the supposed "fraud" more than two years prior to the filing of the section 2-1401 petition.  On May 18, 2011, following a hearing on Steven's motion to

dismiss, the circuit court dismissed the section 2-1401 petition with prejudice and granted Steven leave to file a motion for costs. On February 22, 2012, the circuit court denied Mary's motion to reconsider the May 18, 2011 ruling, finding that since the inception of the case, Mary had "retained the services of at least eleven (11) attorneys and ha[d] issued at least 73 subpoenas related to [Steven's] assets in this case and nine depositions and then voluntarily nonsuited her pending [original September 13, 2000 petition to modify], on the eve of trial, on October 15, 2008." The circuit court further found that Mary admitted in her answers to Steven's requests for admission that she had accused Steven, Mieko, and Sarah of fraud prior to September 28, 2008. The court found that, to date, Mary "has made many allegations and cast many aspersions but she has found no definite facts of fraudulent concealment, shown by clear and convincing evidence"; and that there was no evidence that Steven "intentionally misstated or concealed a material fact which [he] had a duty to disclose and that [Mary] detrimentally [relied] on [Steven's] statement or conduct."

¶ 49 Because the ground for relief alleged[13] in Mary's section 2-1401 petition was fraudulent concealment, the time for filing the section 2-1401 petition was tolled beyond the two-year period after the entry of the 1997 judgment. However, such tolling of time is not without end. In *In re Marriage of Streur*, a former wife filed a section 2-1401 petition, seeking to vacate a portion of a judgment for dissolution of marriage which contained the parties' marital settlement agreement. *In re Marriage of Streur*, 2011 IL App (1st) 082326, ¶ 7. The former wife alleged in her section 2-1401 petition that prior to the entry of the dissolution of marriage judgment, the

---

[13] At the May 18, 2011 hearing, counsel for Steven argued that "fraudulent misrepresentation" rather than "fraudulent concealment" was alleged in Mary's section 2-1401 petition. However, in response, counsel for Mary pointed out that the issue of fraudulent concealment was articulated in her response to Steven's motion to dismiss the petition.

former husband made false statements of material fact regarding his income and assets upon which she relied, and that she could not have presented the matter to the court before the entry of judgment. *Id.* The former wife also alleged that since the judgment was entered, the former husband had continued to refuse to provide her with copies of his pay stubs, W-2 statements, tax returns, and other documents as required by the marital settlement agreement. *Id.* The petition also alleged breach of fiduciary duty, conversion, and unjust enrichment, and sought an accounting and the imposition of a constructive trust. *Id.* Subsequently, the former husband filed a motion to strike and dismiss the section 2-1401 petition, arguing that the former wife failed to allege sufficient facts to state a claim, that the petition was time-barred, and that her claims were barred by the parties' judgment for dissolution of marriage. *Id.* ¶ 8. The circuit court then dismissed with prejudice the section 2-1401 petition, finding that it was time-barred because the section 2-1401 petition was filed two years after the former wife's filing of a "'Second Amended Petition for Rule' " to show cause on " 'essentially the same grounds' " as found in the section 2-1401 petition. *Id.* On appeal, this court affirmed dismissal of the section 2-1401 petition, finding that because the ex-wife had filed a second petition for rule to show cause on June 2, 2004, alleging that the ex-husband had failed to make a full and complete disclosure of his income from all sources in an effort to evade his full obligation of unallocated family support, it was "clear that she was aware of a possible claim on that date, but waited until November 2006, more than two years later, to file her section 2-1401 petition claim." *Id.* ¶ 33. The *Streur* court noted that, because the allegations in both pleadings were the same, the ex-wife had knowledge of a "possible claim" more than two years earlier and, thus, the section 2-1401 petition was time barred. *Id.* In other words, the *Streur* court found that, even if the statute of limitations was tolled as a result of the former husband's fraud, it was clear from the June 2,

2004 pleading that the former wife "had knowledge of a possible basis for vacating the judgment but waited more than two years to file that petition." *Id.* Thus, the *Streur* court found that the former wife failed to timely file her section 2-1401 petition and the circuit court properly dismissed it. *Id.*

¶ 50    Like *In re Marriage of Streur*, in the case at bar, Mary was aware of a "possible claim" or "possible basis" for vacating the 1997 judgment more than two years prior to the filing of her section 2-1401 petition on September 29, 2010. We observe several bases in support of this conclusion. First, as discussed, in her answers to Steven's requests for admission, of which 12 were changed from "denials" to "admissions" during a hearing before the court on March 14, 2011, Mary admitted the following statements (request Nos. 60, 126 and 127):

> "60. Prior to September 28, 2008, [Mary] accused [Steven]
>
> of fraud with respect to the entry of the [1997 judgment].
>
> 126. Before September 28, 2008, [Mary] confronted
>
> [Mieko] and accused her of fraud.
>
> 127. Before September 28, [*sic*] [Mary] confronted [Sarah]
>
> and accused her of fraud."

Because Mary's admissions as detailed above constituted "judicial admissions" which dispensed with proof of a fact claimed to be true, the issue of whether Mary knew of the possibility of fraudulent concealment on the part of Steven with respect to entry of the 1997 judgment was removed from contention. See *Dremco, Inc. v. Hartz Construction Co.*, 261 Ill. App. 3d 531, 535-36 (1994) (judicial admissions are formal acts of a party or its attorney in court, "dispensing with proof of a fact claimed to be true, and are used as a substitute for legal evidence at trial"; judicial admissions "include admissions in pleadings, as well as admissions in open court,

stipulations, and admissions made pursuant to requests to admit").  Because Mary judicially admitted that, prior to September 28, 2008, she had accused Steven of—thus, had knowledge of—fraud with respect to the entry of the 1997 judgment, the filing of her section 2-1401 petition more than two years later, on September 29, 2010, was dilatory and time-barred.

¶ 51    Second, the section 2-1401 petition alleged that Steven had fraudulently concealed from Mary his ownership of property located at 1852 W. Thomas Street and 1937 N. Damen Avenue in Chicago.  Specifically, allegations in the section 2-1401 petition pointed out that Steven's August 1996 Rule 13.3 financial disclosure statements, which predated the parties' execution of the settlement agreement, represented that Steven had transferred the Thomas Street property to his parents, William and Mary Repel, in 1993.  The record shows that, during discovery relating to Mary's September 13, 2000 petition to modify child support, Mary engaged in extensive discovery on Steven's income and assets.  In June 2004, William Repel (William) testified in his deposition that he did not recall ever possessing an ownership interest in the Thomas Street property.  Indeed, Mary's own allegations in the section 2-1401 petition stated that William's deposition testimony contradicted Steven's claim in his August 1996 financial disclosure statements that Steven had "transferred [in 1993] *** property located at 1852 Thomas [*sic*], Chicago Illinois to William Repel and Mary Repel, his father and mother, respectively."  Thus, it could reasonably be concluded that, at least as early as June 2004, more than six years before filing the section 2-1401 petition, Mary knew of a possible claim of the alleged fraudulent concealment of assets by Steven during the period leading up to the entry of the 1997 judgment.

¶ 52    Third, the record also contains other pleadings and documents by Mary, predating the section 2-1401 petition by over two years, which detailed the same type of fraudulent conduct alleged in the section 2-1401 petition.  In a letter dated April 6, 2001, Mary informed the

Attorney Registration and Disciplinary Commission (ARDC) that Steven had "consistently distorted and outright fabricated IRS reports to conceal his true earnings and responsibilities to his legal offspring," by highlighting the existence of certain real estate properties that she claimed were obtained fraudulently—including the Damen Avenue property that was the subject of her section 2-1401 petition. The record also shows that, in a legal malpractice lawsuit filed by Mary against her former attorneys at Schiller DuCanto & Fleck (SDF), she alleged in her complaint that SDF was retained in 2006 to seek return of assets or monies which Steven had dissipated, hidden or transferred—including the Thomas Street and Damen Avenue properties, which were the subject of the section 2-1401 petition. Thus, we find that the filing of the section 2-1401 petition in 2010, more than two years after Mary's belief, if not outright knowledge, of Steven's alleged fraudulent concealment of his assets, was also time-barred on these bases. Accordingly, we conclude that Mary could not sufficiently plead or prove that she exercised due diligence in presenting the section 2-1401 petition. See generally *In re Marriage of Goldsmith*, 2011 IL App (1st) 093448, ¶ 49 (no due diligence shown where, rather than engage in formal discovery, ex-wife elected to accept ex-husband's warranty and representation that he had made a full and complete disclosure of his property).

¶ 53     Further, even if not time-barred, we find that Mary's section 2-1401 petition was properly dismissed where it showed on its face that Mary was not entitled to relief. See *In re Marriage of Buck*, 318 Ill. App. 3d at 493 ("[w]here a section 2-1401 petition fails to state a cause of action or shows on its face that the petitioner is not entitled to relief, the petition is subject to a motion to dismiss"). Mary's section 2-1401 petition alleged no specific facts regarding how Steven intentionally misstated or concealed a material fact, in support of the claim of fraudulent concealment, but instead alleged conclusory statements that Steven made "intentional material

misrepresentations" which "he knew would cause Mary to accept a settlement agreement [providing] for significantly less child support obligations." The petition alleged that, unbeknownst to Mary, Steven had been a partner of the law firm Berg, Repel & Berg since November 1992. However, we find that Steven's August 1996 Rule 13.3 financial disclosure statements, which were produced in response to Mary's written discovery relating to his assets and income, specified that he was "self-employed" and that he earned a monthly gross income of $2,008. Nothing in the petition's allegations or its exhibits showed that Steven received a monthly income greater than what he had reported in the August 1996 financial disclosure statements.

¶ 54    Further, the section 2-1401 petition alleged that on December 4, 1996, "forty days before the entry of the Settlement Agreement," Steven obtained a $206,250 mortgage and a $41,000 home equity loan on the Thomas Street property, despite his representation in the August 1996 financial disclosure statements that ownership of the Thomas Street property had been transferred to his parents in 1993. The petition included two exhibits showing copies of the $206,250 mortgage note, which was recorded on December 12, 1996, and the $41,000 home equity loan agreement, which was recorded on January 8, 1997. The petition also alleged that on December 10, 1996, "thirty-four days before the entry of the Settlement Agreement," Steven quitclaimed the Damen Avenue property to his then-wife, Mieko, and that the quitclaim deed was not recorded until February 20, 1998. We find that Mary failed to show that she was entitled to relief on this basis. First, we note that the parties' settlement agreement was actually "made and entered into" on September 13, 1996, as noted in the 1997 judgment which incorporated the settlement agreement. Because the September 1996 settlement agreement *predated* the mortgage and loan transactions surrounding the Thomas Street property and the conveyance of the Damen

Avenue property in December 1996, the section 2-1401 petition failed to sufficiently show on its face how Mary detrimentally relied upon Steven's statements in entering into the settlement agreement. The section 2-1401 petition made no allegations that Steven in fact had an ownership interest in the Thomas Street and Damen Avenue properties during the continuous period prior to and after the execution of the settlement agreement, and we decline to speculate when or how he came into possession of these properties. Second, even *assuming* that the execution of the settlement agreement occurred simultaneously with the entry of the 1997 judgment on January 13, 1997, *after* the December 1996 loan transactions for the Thomas Street and Damen Avenue properties, Mary has failed to allege how, at the very least, she could not reasonably have discovered prior to the entry of the 1997 judgment, the existence of the mortgage note and home equity loan interest for the Thomas Street property—which were recorded with the Cook County recorder in December 1996.

¶ 55    Notwithstanding the foregoing, Mary makes various arguments on appeal that none of the pleadings she had filed prior to the filing of her section 2-1401 petition in 2010 contained allegations of fraud against Steven for the period leading up to the entry of the 1997 judgment. She claims that this showed that she had no proof of fraudulent acts which occurred prior to the 1997 judgment date until such time that she discovered that Steven had in fact owned property and obtained mortgages, and she speculates that "he could not have been in default of his student loans and would reasonably have had concurrent substantial sums of money near and during the time he persuaded [her] to enter into the 1997 [judgment]." We do not see how this argument advances Mary's position in any way. Whether or not Mary had alleged in her previous pleadings specific fraudulent conduct against Steven regarding the period leading up to the 1997 judgment did not negate the fact that, as discussed, she was aware of a "possible claim" or

"possible basis" for vacating the 1997 judgment more than two years prior to the filing of her section 2-1401 petition on September 29, 2010. See *In re Marriage of Streur*, 2011 IL App (1st) 082326, ¶ 33. It is significant to note that *all* of the exhibits in support of Mary's section 2-1401 petition (exhibits A to I), either were already of record during litigation of Mary's previous petitions to modify child support or at least were available to Mary as a matter of public record more than two years prior to the filing of the section 2-1401 petition.

¶ 56 Mary makes several additional arguments in support of her contention, including her claim that she was entitled to rely upon the representations made by Steven and that she was "sufficiently misled" by his filing of a Rule 298 application for the waiver of court fees in 1995 and his August 1996 financial disclosure statements, "which would permit a reasonable person to reach the conclusion that any discovery would be futile and fruitless." A thorough review of those arguments leads us to reject them as well, since nothing has been argued that would excuse Mary's lack of diligence.

¶ 57 Mary further argues that the circuit court erred in not conducting an evidentiary hearing on her section 2-1401 petition, but instead, only held oral arguments before making its May 18, 2011 ruling to dismiss her petition. In support of this argument, Mary cites *In re Marriage of Buck*, 318 Ill. App. 3d 489; *G.M. Sign, Inc. v. Schane*, 2013 IL App (2d) 120434; *In re Marriage of Johnson*, 2011 IL App (1st) 102826; *Minch v. George*, 395 Ill. App. 3d 390 (2009); and *Nessler v. Nessler*, 387 Ill. App. 3d 1103 (2008). We find Mary's reliance on these cases to be misplaced as none of those cases involve judicial admissions, as in the instant case. Rather, those cases involve questions of fact that needed to be resolved or a record that was not sufficiently developed to enable the court to make a ruling without an evidentiary hearing. Thus, we find that the circuit court in the case at bar was not required to conduct a full evidentiary

hearing prior to dismissing the section 2-1401 petition. Accordingly, based on the foregoing, we hold that the circuit court did not err in dismissing with prejudice Mary's section 2-1401 petition.

¶ 58    We next determine whether the circuit court erred in imposing a total of $31,977.83 in attorney fees and costs upon Mary. We review this issue under the abuse of discretion standard. See *In re Marriage of Patel*, 2013 IL App (1st) 112571, ¶ 67; *First National Bank of LaGrange v. Lowrey*, 375 Ill. App. 3d 181, 218 (2007).

¶ 59    On March 12, 2012, Steven filed a petition for attorney fees along with relevant exhibits, pursuant to sections 508(a) and (b) of the Illinois Marriage and Dissolution of Marriage Act (750 ILCS 5/508(a), (b) (West 2010)), as well as under Illinois Supreme Court Rule 137 (eff. Feb. 1, 1994), for costs he incurred in defense against Mary's section 2-1401 petition. Steven's petition for attorney fees incorporated by reference, his previous May 31, 2011 motions for fees and costs with regard to Mary's evasive answers to his November 22, 2010 requests for admission—the "motion for attorney's fees or expenses on refusal to admit" and the "motion for statutory costs." On November 27, 2012, a hearing was held on Steven's petition for attorney fees. Evidence presented at the hearing included the testimony of Steven's counsel, Attorney Verr, regarding the expenditure of his time and effort in defending against Mary's section 2-1401 petition and regarding litigation over Steven's requests for admission. On February 5, 2013, the circuit court entered an order, pursuant to Illinois Supreme Court Rule 219(b) (eff. July 1, 2002) and section 508(b) of the Illinois Marriage and Dissolution of Marriage Act (750 ILCS 5/508(b) (West 2012)), granting Steven attorney fees and costs in the amount of $31,977.83. On October 31, 2013, the circuit court denied Mary's motion to reconsider the February 5, 2013 order.

¶ 60    Mary argues on appeal that the circuit court improperly utilized section 508(b), rather than section 508(a) of the Illinois Marriage and Dissolution of Marriage Act, in imposing

attorney fees upon her. She contends that because the award of attorney fees in this case arose out of the defense of her section 2-1401 petition and the circuit court never imposed sanctions under Rule 137, section 508(a) governs and the circuit court erred in not weighing the parties' respective incomes prior to imposing fees upon her. Mary further argues that she was unable to pay the attorney fees imposed upon her, that she not be required to exhaust her financial estate to do so, and that Steven was able to pay the attorney fees that he sought to impose upon her. Mary further contends that, during the November 27, 2012 hearing on Steven's petition for attorney fees, the circuit court erroneously prevented Mary's counsel from introducing certain evidence to establish that Steven was more than capable of paying his own attorney fees—including inquiring about the details of Steven's ownership of a Porsche vehicle in 2010; asking Attorney Verr on cross-examination regarding certain properties that may be encumbering Steven's primary residence in Highland Park, Illinois; and introducing evidence to show that Sarah's monetary contributions to Steven "count[ed] as income."

¶ 61    Steven counters that the circuit court did not abuse its discretion in imposing fees and costs against Mary pursuant to section 508(b) of the Illinois Marriage and Dissolution of Marriage Act. He contends that because his May 31, 2011 "Motion for Attorney's Fees or Expenses on Refusal to Admit" (pursuant to Supreme Court Rules 219(b) and Rule 216(c)) and "Motion for Statutory Costs" were pending before the court and properly incorporated into his March 12, 2012 petition for attorney fees brought pursuant to sections 508(a) and (b) of the Illinois Marriage and Dissolution of Marriage Act, the circuit court did not err in sanctioning Mary under Rule 219(b) and section 508(b). He points out that during the November 27, 2012 hearing on his petition for attorney fees, counsel for Mary had cross-examined Attorney Verr for over three hours, and testimonial evidence from Attorney Verr included his explanations for the

expenditure of his time and effort in defending against the section 2-1401 petition and the litigation surrounding the requests for admission. Steven argues that, in imposing sanctions against Mary under Rule 219(b) and section 508(b), the circuit court properly found that Mary had "deliberately prevaricated" her answers to Steven's requests for admission, that she had "needlessly increased the cost of litigation," and that Attorney Verr's fees were fair and reasonable. Steven further contends that the circuit court need not consider the parties' respective income and assets under the section 508(b), and that, as a matter of law, no evidence of Steven's finances was necessary.

¶ 62 Section 508 of the Illinois Marriage and Dissolution of Marriage Act (the Marriage Act) provides in part the following:

"(a) The court from time to time, after due notice and hearing, and after considering the financial resources of the parties, *may* order any party to pay a reasonable amount for his own or the other party's costs and attorney's fees. *** Awards *may* be made in connection with the following:

* * *

(4) The maintenance or defense of a petition brought under Section 2-1401 of the Code of Civil Procedure seeking relief from a final order or judgment under this Act.

* * *

(b) In every proceeding for the enforcement of an order or judgment when the court finds that the failure to comply with the

order or judgment was without compelling cause or justification, the court *shall* order the party against whom the proceeding is brought to pay promptly the costs and reasonable attorney's fees of the prevailing party. If non-compliance is with respect to a discovery order, the non-compliance is presumptively without compelling cause or justification, and the presumption may only be rebutted by clear and convincing evidence. If at any time a court finds that a hearing under this Act was precipitated or conducted for any improper purpose, the court shall allocate fees and costs of all parties for the hearing to the party or counsel found to have acted improperly. Improper purposes include, but are not limited to, harassment, unnecessary delay, or other acts needlessly increasing the cost of litigation." (Emphases added.) 750 ILCS 5/508 (West 2012).

¶ 63 Supreme Court Rule 219(b) provides:

"If a party, after being served with a request to admit the genuineness of any documents or the truth of any matters of fact, serves a sworn denial thereof, and if the party requesting the admissions thereafter proves the genuineness of the document or the truth of the matter of fact, the requesting party may apply to the court for an order requiring the other party to pay the requesting party the reasonable expenses incurred in making the proof, including reasonable attorney's fees. Unless the court finds that

there were good reasons for the denial or that the admissions sought were of no substantial importance, the order *shall* be made." (Emphasis added.) Ill. S. Ct. R. 219(b) (eff. July 1, 2002).

¶ 64    We find that the circuit court did not abuse its discretion in imposing attorney fees and costs upon Mary under section 508(b) of the Marriage Act and Rule 219(b). The primary reason for the circuit court's imposition of fees and costs upon Mary was for her refusal to answer or her changing her answers to Steven's requests for admission. The circuit court is presumed to know the law and apply it properly, absent an affirmative showing to the contrary in the record. *In re N.B.*, 191 Ill. 2d 338, 345 (2000). In its February 5, 2013 order imposing $31,977.83 in attorney fees and costs upon Mary, which was less than the amount of fees requested by Attorney Verr, the circuit court specifically found that Mary's action in failing to properly answer Steven's requests for admission was "without compelling cause or justification," and found that Mary "deliberately prevaricated" her answers in the requests for admission when, in open court on March 14, 2011, she changed "twelve (12) of the fifty (50)" answers from "deny" to "admit" which "needlessly increased the cost of litigation." The circuit court also found that the hourly rate of $350 per hour by Attorney Verr was "fair and reasonable given the complexity of the issues and [Attorney Verr] had been licensed to practice law *** since 1986." Our review of the circuit court's findings leads us to conclude that the circuit court knew the law and applied it correctly. Because the crux of the circuit court's February 5, 2013 findings pertained to Mary's conduct in responding to Steven's discovery requests, and the mandatory language of "shall" contained in section 508(b) required the court to impose fees against the party who fails to comply with a court's discovery orders, we find that the circuit court properly imposed fees and costs against Mary under section 508(b) rather than section 508(a) of the Marriage Act. We

further find that because the plain language of section 508(b) does not require a court to weigh the parties' respective income and assets before imposing fees upon the non-compliant party, we necessarily reject Mary's various arguments that the circuit court erred in failing to weigh the parties' income and consider the parties' respective ability to pay.

¶ 65    Mary contends that, even if section 508(b) of the Marriage Act applied, Steven had "never proved" that her answers to his requests for admission were false or improper, as required by Rule 219(b).  She contends that an evidentiary hearing should have been held to allow for the presentation of witnesses and for Mary to testify about her answers to the requests for admission. We find Mary's argument to be unpersuasive and suggestive of a desire to extend the litigation. As noted, Rule 219(b) provides that "[i]f a party, after being served with a request to admit the genuineness of any documents or the truth of any matters of fact, serves a sworn denial thereof, and if the party requesting the admissions thereafter proves the genuineness of the document or the truth of the matter of fact, the requesting party may apply to the court for an order requiring the other party to pay the requesting party the reasonable expenses incurred in making the proof, including reasonable attorney's fees."  Ill. S. Ct. R. 219(b) (eff. July 1, 2002).  Because Mary, represented by Attorney Schusteff, changed 12 of her answers from "denials" to "admissions" in open court at the March 14, 2011 hearing on Steven's motion to strike her answers to his requests for admission—which was filed on the basis that Mary's answers lacked truthful foundation, were belied by the record and were otherwise improper—Steven need not additionally "prove" the truth of the matters asserted with regard to his requests for admission that Mary had initially denied or raised an objection.  We further reject Mary's cited cases in support of her argument.  None of those cases involved a party who changed his answers from denials to admissions in open court in acknowledging the truthfulness of the requested matters.

See *McGrath v. Botsford*, 405 Ill. App. 3d 781 (2010); *Fraser v. Jackson*, 2014 IL App (2d) 130283; *In re Marriage of Johnson*, 2011 IL App (1st) 102826; *Mohica v. Cvejin*, 2013 IL App (1st) 111695; *Serrano v. Rotman*, 406 Ill. App. 3d 900 (2011).

¶ 66    Mary also makes various arguments in the alternative that Steven tendered "improper or unreasonable billing," and points to several billing entries which she claims demonstrated overbilling or unreasonable billing practices.  However, during the November 27, 2012 hearing on Steven's petition for attorney fees, counsel for Mary had the opportunity to cross-examine Attorney Verr regarding his billing statements, which were included in Steven's petition for attorney fees.  Counsel for Mary questioned Attorney Verr about the specifics of many of the same billing entries of which Mary now complains on appeal, and the court heard counsel's arguments on this issue.  During the October 31, 2013 hearing on Mary's motion to reconsider the court's imposition of attorney fees and costs, the court again heard Mary's counsel make various arguments regarding specific billing entries submitted by Attorney Verr.  Based on our examination of the record, we cannot conclude that the circuit court's imposition of $31,977.83 in attorney fees and costs upon Mary, was unreasonable and an abuse of discretion.  The record shows that, although Steven's petition for attorney fees had originally sought $42,737.04 in fees and costs, after considering the parties' arguments and evidence, the circuit court reduced the amount of the award by $10,759.21, and only imposed a total of $31,977.83 in fees and costs against Mary.  In its ruling, the circuit court specifically noted that it had reduced at least one-quarter of the fees originally sought by Attorney Verr; that the court did not award Attorney Verr any "travel time, which he [was] entitled to"; that it "could have been a lot more generous, *** taking into consideration also [Mary's] income"; that Mary should take some responsibility for the fact that the litigation had been ongoing since 1995; and that Attorney Verr's hourly rate of

$350 was "fair and reasonable given the complexity of the issues"; and that Attorney Verr, a Harvard College graduate, had been practicing law since 1986. Therefore, based on the foregoing, we hold that the circuit court's imposition of $31,977.83 in attorney fees and costs upon Mary was not reasonable and an abuse of discretion. See *J.B. Esker & Sons, Inc. v. Cle-Pa's Partnership*, 325 Ill. App. 3d 276, 282-83 (2001) (a determination of reasonableness in imposing attorney fees is a matter of the circuit court's discretion; the court may look to factors such as (1) the skill and standing of the attorney; (2) the nature of the case; (3) the novelty of the issues involved; (4) the significance of the case; (5) the degree of responsibility required; (6) the customary charges for comparable services; (7) the benefit to the client; and (8) the reasonable connection between the fees sought and the amount involved in the litigation).

¶ 67    In light of our holding, we need not address Steven's additional arguments that Mary had "unclean hands" or his arguments that her section 2-1401 petition was a sham that was filed only because she was statutorily foreclosed from seeking retroactive modification of the child support payments. Further, we decline to impose sanctions against Mary under Illinois Supreme Court Rule 375 (eff. Feb. 1, 1994), where Steven made only conclusory arguments that her "appeal is frivolous and without any foundation in law or fact," and we cannot conclude that the appeal was not brought in good faith.

¶ 68    For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 69    Affirmed.