2022 IL App (1st) 210147-U

No. 1-21-0147

Filed March 31, 2022

Fourth Division

**NOTICE**: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| TATYANA RIVTIS, and ANNA (ANYA) RIVTIS, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| WOMA, INC., VOLKAN TURAN, MINT REMODELING CORPORATION, GERMUSKA MARKO d/b/a MARKO QUALITY, and FATHER & SON RODRIGUEZ LAWN CARE INC., | ) ) ) ) ) | No. 18 CH 09199 |
| Defendants. | ) ) | |
| (Tatyana Rivtis, Plaintiff-Appellee v. Volkan Turan, Defendant-Appellant). | ) ) ) | Honorable Patrick J. Sherlock Judge, presiding. |

Justice MARTIN delivered the judgment of the court.
Justices Lampkin and Rochford concurred in the judgment.

**ORDER**

¶ 1    *Held*: Vacatur of judgment against debtor corporation for reasons unrelated to the merits did not require vacatur of judgment against corporation's owner who was personally liable as guarantor on a promissory note. Award of attorney fees was proper.

¶ 2    Volkan Turan, the sole owner of a home rehabilitation company, executed a promissory note in conjunction with a loan of $50,000 he received from Tatyana Rivtis. After a bench trial, the circuit court found that Turan and his company, Mint Remodeling Corporation (Mint), were jointly and severally liable on the note and entered judgment against them and in favor of Rivtis. In a subsequent proceeding, the court found that Tatyana[1] was also entitled to an award of $13,331.15 in attorney fees. Following denial of the defendants' motion to reconsider, the circuit court *sua sponte* vacated the judgment against Mint. The judgment against Turan remained and he appeals. We affirm.[2]

¶ 3                                I. JURISDICTION

¶ 4    On October 26, 2020, the court issued a written order entering judgment in favor of Tatyana, and against Turan and Mint, in the amount of $50,000 plus $6041.67 in interest, along with attorney fees. On November 30, 2020, the court issued an order specifically awarding Tatyana $13,331.15 in attorney fees. Turan filed a motion to reconsider the trial court's judgment on December 21, 2020. On January 13, 2021, the court entered a written order denying the defendants' motion to reconsider. Thereafter, on January 14, 2021, the court *sua sponte* entered an order vacating the judgment against Mint. Turan filed a timely notice of appeal on February 10, 2021. Accordingly, this court has jurisdiction to consider this matter, pursuant to Illinois Supreme Court Rules 301 and 303. See Ill. S. Ct. R. 301 (eff. Feb. 1, 1994); R. 303 (eff. July 1, 2017).

¶ 5                                II. BACKGROUND

¶ 6    The trial testimony and pleadings reveal that Turan, for at least 20 years prior, had solely owned and operated a small company called Mint Remodeling Corporation (Mint). Turan, through

_____

[1]We refer to the appellee by first name to distinguish her from her daughter, Anna Rivtis.
[2]In adherence with the requirements of Illinois Supreme Court Rule 352(a) (eff. July 1, 2018), this appeal has been resolved without oral argument upon the entry of a separate written order.

Mint, was engaged in the business of remodeling and rehabilitating real estate. One such home remodeling project undertaken by Mint was located at 3517 N. Keating Avenue in Chicago (Keating property).

¶ 7     The Keating property was owned by an entity known as Woma, Inc. (Woma), which was in turn owned by Wilma Wyngaart. Turan was the general contractor responsible for rehabbing the Keating property. In exchange for his work, and upon the sale of the Keating property, Turan was to receive 50% of the sale proceeds.

¶ 8     In 2017, Turan met with an acquaintance, Anna Rivtis, and they discussed his involvement in the Keating property. Turan explained to Anna that he had invested $60,000 of his own funds into the rehabilitation and needed an infusion of capital to complete the work. After discussing the potential profit from the sale of the Keating property, Anna suggested the possibility that her mother, Tatyana, may have an interest in loaning Turan funds so that he could complete the project. Anna explained that her mother had experience in loaning money and investing in such projects.

¶ 9     Prior to meeting with Tatyana, Turan sent Anna a "template" of a promissory note. Anna filled in the address, dollar amount, and other "minor things." Turan told Anna he would personally guarantee the loan and that, instead of interest, he would pay Tatyana 17% of the profit from the sale of the Keating property.

¶ 10    Tatyana and Turan eventually spoke and agreed to meet so that they could further discuss a potential loan to Turan. On August 23, 2017, Tatyana and Turan met at a coffee shop where Tatyana agreed to loan Turan $50,000 as an "investor" in the Keating property. They both signed a document titled "Promissory Note," which stated in relevant part:

> "For value received $50,000.00 (fiftythousandUSdollar) received (hereinafter referred to as principal), as borrowed capital for project at 3517 N Keating, Chicago, IL 60641, I

understand ("Debtor") Volkan Turan as president of Mint Remodeling Corporation \*\*\*
Barrington, Hills, IL 60010 promises to pay to Tatyana Rivits full $50,000.00
(fiftythousandUSdollar) as principal plus 17% of the profit earned before tax (tax free)
from the project, property tax and other discussed charges will be prorated at the time of
sale based on 17% of this share.

Said sum will be paid in 2 different cashier checks, 1 for the $50,000.00
(fiftythousandUSdollar) and remaining balance as a separate cashier check, within 10 days
after closing of the property to Tatyana Rivtis.

This note shall at the option of any party hereto be due with two weeks notice prior closing
of the property.

In the event this note shall be in default, and placed with an attorney for collection, then
the undersigned agree to pay all reasonable attorney fees and costs of collections. Payments
not paid with five (5) days of the due date shall be subject to a late charge of 5% of
payment.

\*\*\*

Guaranty

We the undersigned jointly and severally guarantee the prompt and punctual payment of
all monies due under the aforesaid now and agree to remain bound until fully paid.

Debtor: Mint Remodeling Corporation \*\*\*" [*sic*]

¶ 11     After signing the note, Tatyana and Turan proceeded to Tatyana's bank, where she tendered
him a cashier's check in the agreed amount of $50,000. At Turan's request, the check was made
payable to Mint. Shortly thereafter, Turan deposited the check into Mint's company bank account.
Upon depositing the check, Turan—by way of a wire transfer—used $40,213 of the $50,000 to

pay his personal residential mortgage, which at the time was in arrears.

¶ 12    Some months later, in May 2018, Tatyana texted Turan demanding repayment of her investment. Turan neither responded to Tatyana's demand for repayment, nor did he inform Tatyana that he had used the borrowed money to pay off the mortgage on his house.

¶ 13    In July, Tatyana's daughter, Anna, recorded a mechanic's lien on the Keating property. The mechanic's lien asserted that Anna had performed certain work to improve the property, at the direction of Turan, and Anna had not been paid. Tatyana and Anna then filed a joint complaint in the circuit court. The complaint sought to foreclose on Anna's mechanic's lien and alleged that Turan and Mint breached the promissory note by failing to pay Tatyana the $50,000 upon her demand.[3] The complaint claimed that Turan personally guaranteed the note.

¶ 14    After reaching a settlement with the Keating property owner, Anna released her lien, and her cause of action was dismissed. Tatyana then filed an amended complaint. The amended complaint alleged that Turan represented he would use the $50,000 from Tatyana to pay for remodeling work on the Keating property and that Turan drafted the promissory note. The amended complaint further alleged that Tatyana demanded repayment because Turan did not use the money on the project and was not making progress toward a sale of the property. The amended complaint asserted separate counts for breach of the promissory note, consumer fraud, and unjust enrichment.

¶ 15    Turan and Mint filed a motion to dismiss the amended complaint, arguing that it failed to state a cause of action and contained other defects. Among other arguments, the motion requested that the amended complaint be dismissed against Turan, in his individual capacity. In a written

---

[3]Woma Inc., as the record owner of the Keating property, was named as a defendant. Germuska Marko and Father & Son Rodriguez Lawn Care Inc. were also named as defendants due to their respective recorded liens on the Keating property. All three parties were ultimately dismissed from the action.

order, the circuit court observed that the amended complaint alleged that Turan personally guaranteed the note and the "Guaranty" language contained in the document was amenable to such an interpretation. Accordingly, the court denied the motion to dismiss Turan. Additionally, the court found that, though short on specifics and conclusory at times, the amended complaint sufficiently pled a cause of action for breach of contract and denied the defendants' motion to dismiss that count. The court agreed, however, that the amended complaint failed to plead sufficient facts to assert a claim of consumer fraud and impermissibly combined causes of action. Therefore, the court granted Tatyana leave to amend her complaint to replead distinct counts and allegations specific to each cause of action.

¶ 16        In July 2019, Tatyana filed a second amended complaint, asserting separate counts of breach of the promissory note: one count as to Turan personally and the other as to Mint. The second amended complaint further pled consumer fraud and unjust enrichment as to both Turan and Mint.

¶ 17        The defendants moved to dismiss the second amended complaint arguing, among other things, that the complaint was legally deficient. In a written order, the court reiterated that an ambiguity in the promissory note could potentially mean that Turan was personally bound by it as a guarantor. The court rejected the defendants' argument that Tatyana did not allege that she made a demand, which the defendants contended was a condition precedent to any payment obligation. The court found the defendants' other arguments could be pled in an answer. As to the consumer fraud count, the court found that Tatyana did not plead sufficient specific facts to assert such a claim and dismissed that count. The court also dismissed the unjust enrichment count, as Tatyana premised that claim on an express agreement.

¶ 18      The matter proceeded to a bench trial on the two counts alleging breach of promissory note. In his opening statement, Turan's counsel stated that the count against Mint "is [pled] in the alternative and, of course, that means only if [the count against Turan] would fail. So, it would be one or the other, never both, in terms of what [Tatyana] in [her] pleading could possibly seek to gain."

¶ 19      Anna testified that Turan told her that he wanted the $50,000 check made out to Mint. Turan never indicated that repayment was conditioned on the sale of the Keating property. Rather, Turan informed her that he was personally guaranteeing repayment of the loan. That is what Anna understood the "Guaranty" language of the note to mean. She further stated that Tatyana first demanded repayment from Turan by text message in May 2018. Anna also testified that Turan admitted in arbitration that he used the funds he received from Tatyana to pay off his own personal loan related to a property in foreclosure in McHenry County, Illinois. A record from the Clerk of the Circuit Court for the 22nd Judicial Circuit established that a foreclosure case, in which Turan was a named defendant, was dismissed without prejudice on October 4, 2017.

¶ 20      On cross-examination, Anna testified that she was not present when Tatyana and Turan met to sign the promissory note and, thus, did not observe any communication between them. She explained that Turan sought the loan from Tatyana because the owner of the Keating property wanted to buy out another partner and complete the renovation for sale.

¶ 21      Called as an adverse witness, Volkan Turan testified that he had spent $60,000 of his own funds on Mint's Keating property rehabilitation and needed additional funds to complete the work. At the time Tatyana loaned him the $50,000, his own house was in foreclosure. Shortly after he received the funds from Tatyana, Turan made a $40,213 payment—the amount he was delinquent—on his home loan. At no time did he tell Tatyana he had used the borrowed money to

pay off the arrears on his mortgage. Regarding the promissory note, Turan understood the "Guaranty" term to mean that Mint guaranteed the loan, not him personally.

¶ 22    Upon questioning from his own counsel, Turan testified that he first met Tatyana at a social occasion a few years before they signed the promissory note. Thereafter, he met with her a couple of months before the loan, and they discussed potential projects for the future. He further testified he met with Tatyana and Anna at a restaurant a week before he and Tatyana signed the note. Turan stated that he told Tatyana the money she was loaning him would be "tied to the property" and would be repaid after the Keating property sold. According to Turan, Tatyana drafted the promissory note and Anna sent it to him for review before Anna made final changes. Turan testified that he did not make or request any modification of the document. Rather, he just "need[ed] money" and would accept whatever writing Anna and Tatyana were "comfortable" with. Turan believed repayment of the borrowed funds was conditioned upon the sale of the Keating property. Turan further testified that Tatyana never requested his personal guarantee of the loan.

¶ 23    At the time of the loan, the Keating project was near completion. Turan had previously agreed with Wyngaart to evenly divide the proceeds from the sale of the Keating property. A potential buyer expressed interest in the property in 2018, when Turan began receiving communications from Tatyana and her attorney. However, the potential buyer ultimately chose not to purchase the Keating property. Turan's business relationship with Wyngaart deteriorated and the two were only communicating between attorneys. Woma closed on the Keating property sometime in 2018, without Turan's knowledge, and he received no money resulting from the sale. Ultimately, Turan did not believe there was any obligation to repay Tatyana.

¶ 24        Tatyana testified that Turan never told her that repayment of her loan was conditioned on the sale of the Keating property. Tatyana attested that she had incurred attorney fees related to this matter and authenticated invoices from her counsel.

¶ 25        During argument, the court asked Tatyana's counsel to respond to Turan's counsel's opening remarks, which asserted that, since Tatyana pled the counts against Turan and Mint in the alternative, if she prevailed on one, she could not prevail on the other. Tatyana's counsel acknowledged the counts were pled in the alternative, but he insisted they were not intended to be mutually exclusive. Rather, he asserted, Tatyana could prevail on both and requested all relief Tatyana was entitled to.

¶ 26        Turan's counsel countered that Tatyana was trying to "have it both ways;" that is, that she was pointing to Turan's single signature as both Mint's acceptance of the promissory note and Turan's personal guaranty. Counsel contended that if Turan's signature signified his personal guaranty, then the promissory note lacked a signature on behalf of Mint. Alternatively, if the signature was on behalf of Mint, then Turan was not personally bound. In his view, the one signature could not obligate both Turan and Mint. Counsel further argued that the debt never became due because repayment was contingent on the sale of the Keating property. And, though there was a closing on the property, Turan had no part in it and never received any proceeds from that sale. Rather, he lost the $60,000 he had put into the rehabilitation. Counsel also argued that the demand term, which stated, "[t]his note shall at the option of any party hereto be due with two weeks notice prior closing of the property" meant that a demand could only be made within two weeks before the closing. Thus, he submitted that Tatyana did not make a proper demand under the note to trigger any repayment obligation.

¶ 27        The court ruled orally that, in signing the promissory note, Turan had agreed to act as personal guarantor. Thus, the court entered judgment in favor of Tatyana, against Turan, in the amount of $50,000. The court also found that Tatyana was entitled to 5% interest, accruing from the date of her demand in May 2018, in the amount of $6041.67. The court also entered judgment against Mint in the same amount. The court added that it did not find repayment to be contingent upon the sale of the Keating property. Regarding Tatyana's request for attorney fees, the court stated that it was taking her request as an "opening submission" and allowed the defendants 10 days to file a response.

¶ 28        Following trial, the court issued a written order entering judgment in favor of Tatyana in the amount of $50,000 plus interest. The court explained it found that payment was not contingent upon sale of the Keating property and Turan and Mint were jointly and severally liable. The order also set the matter for subsequent proceedings regarding Tatyana's petition for attorney fees.

¶ 29        On November 24, 2020, the court held a hearing regarding Tatyana's request for attorney fees and on the defendant's motion to dismiss the request for fees. Counsel for Turan objected to an award of attorney fees, asserting that no fee petition was filed, and only invoices had been submitted at trial as an exhibit. Therefore, counsel argued the matter was not properly before the court. Counsel further contended that, without a filed petition, Tatyana had failed to demonstrate that the fees she was requesting were reasonable. Apart from the lack of a petition, counsel argued that Tatyana's request included fees for work unrelated to the legal matter between Tatyana and Turan. Specifically, the invoices included items pertaining to Anna's mechanic's lien case with Woma, which resulted in a settlement and the dismissal of those parties from the case. Counsel also urged the court to reject fees for work done prior to the filing of Tatyana's second amended complaint, as her first two complaints were found deficient. Likewise, counsel noted that Tatyana

only succeeded on her breach of contract claims, as her consumer fraud and unjust enrichment claims were dismissed, and this should factor in what, if any, fees the court should allow.

¶ 30    The court found that the promissory note provided for the recovery of attorney fees if Tatyana were to prevail, and that Tatyana did prevail. The court went on to note that Tatyana introduced her legal expenses at trial and the court subsequently set a date to address that matter. While noting that the normal practice for requesting attorney fees is to file a petition following trial, the court stated it "doesn't mean that that's the only way it can be done." The court noted that the defendants' motion to dismiss the fee request challenged some fees with specificity, so the court set the matter for an evidentiary hearing to take place the following day.

¶ 31    At the hearing, Tatyana's counsel testified in detail regarding the work performed on behalf of Tatyana and his billing practices, which included waiving certain fees and charging a lower rate for paralegal type work that he performed himself. Counsel recounted difficulties in perfecting service on certain parties and the necessity to serve all parties with a potential interest in the Keating property. He also explained his reasoning behind pursuing a mechanic's lien foreclosure— to force a sale of the Keating property—and for including a fraud count—to exclude Tatyana's claim from potential bankruptcy protection. Counsel clarified that another lawyer, with an "Of Counsel" relationship, made some appearances and performed some work on this case. In any event, counsel's professional corporation billed Tatyana. Turan's counsel cross-examined Tatyana's counsel at length.

¶ 32    The court ruled as follows:

"I have heard the testimony of [Tatyana's counsel] as well as [Tatyana] at the trial. I think [counsel] makes a good point when he goes through the history of the case, including the motions to compel, the motions to dismiss, the arbitration, the third-party

subpoenas, the efforts that this defendant made in order to delay and make it difficult for the plaintiff to win the case. All of that added to the costs of what might otherwise be characterized as a simple promissory note, but indeed, as [counsel] points out correctly, it wasn't necessarily a simple promissory note because this was not a note drafted by lawyers that was particularly clean. So there were some wrinkles in it. It was not easy by any stretch of the imagination, and it was complicated by [Turan's counsel's] able defense of the case.

The bills total, including for the trial and the trial prep, total $15,331.15. [Turan's counsel] raises a good point when he suggests that perhaps Mr. Turan should not be on the hook for the attorney's fees incurred in the mechanic's lien claim brought on behalf of Anna Rivtis. She was not a party to the case. I had done the math. The case was transferred from the Mechanic's Lien Division to the Law Division on February 7th, 2019. The total fees in advance of that date were close to $4,000. They were $4,968.93, but it can't be fairly said that all of that time was spent pursuing mechanic's lien because the mechanic's lien claim and the note claim were part and parcel of the same lawsuit. So I am going to reduce that amount by 50 percent, roughly, and make it an even $2,000 deduction, so the amount of attorney's fees awarded in the case is $13,331.15. That includes costs."

Subsequently, the court entered a written order consistent with its findings.

¶ 33       The defendants then filed a motion to reconsider and vacate both the judgment and the award of attorney fees. The court thereafter entered a written order denying the motion to reconsider. The order stated that the court presided over a trial lasting "several hours." Evidence showed that Turan used the $50,000 from Tatyana to pay off a delinquent balance on his home mortgage. The court commented that the terms of the promissory note and other evidence did not corroborate but, rather, contradicted the defendants' claim that repayment was contingent on a

profitable sale of the Keating property. Additionally, the court recounted that Tatyana testified that she understood Turan to have personally guaranteed the debt, while he denied such in his testimony. The court found Tatyana more credible than Turan. Further, the court observed that Turan's signature did not include a reference to the corporation or his corporate office. Rather, Turan's signature could be taken as being both in his personal and corporate capacities. The court described the promissory note as "not altogether clear" but ultimately found that it constituted Turan's personal guarantee of Mint's corporate debt. Lastly, the court rejected the defendants' request to vacate the award of attorney fees.

¶ 34       The following day, the court entered an order *sua sponte* vacating the judgment against Mint. The court stated that it reviewed Tatyana's second amended complaint and noted that it pled Mint's liability on the note only in the alternative to the other count alleging Turan was personally liable as guarantor. Since the court had entered judgment in Tatyana's favor with respect to the count against Turan, the court found that it could not enter judgment on the alternative count against Mint. Turan filed a timely notice of appeal.

¶ 35                                  II. ANALYSIS

¶ 36                        A. Motion to Strike Turan's Brief

¶ 37       At the outset, we address Tatyana's motion to strike Turan's opening brief. Tatyana accurately points out that Turan's "Statement of Facts" does not refer to the record on appeal. To be sure, the Illinois Supreme Court Rules require that an appellant's brief filed before this court include a Statement of Facts, which must be "stated accurately and fairly without argument or comment, and with appropriate reference to the pages of the record on appeal." Ill. S. Ct. R. 341(h)(6) (eff. Oct. 1, 2020). Turan's opening brief fails to comply with these requirements, where his Statement of Facts is argumentative and lacks citation to the record.

¶ 38　　　　The rules for appellate briefs are not mere suggestions and we may exercise our discretion to strike a brief for failure to comply. *Wing v. Chicago Transit Authority*, 2016 IL App (1st) 153517, ¶ 11. However, " 'striking of an appellate brief, in whole or in part, is a harsh sanction and is appropriate only when the alleged violations of procedural rules interfere with or preclude review.' " *Rottman v. Illinois State Officers Electoral Bd.*, 2018 Il App (1st) 180234, ¶ 23 (quoting *Independent Trust Corp. v. Kansas Bankers Surety Co.*, 2016 IL App (1st) 143161, ¶ 33). We do not find Turan's lack of reference to the record and inappropriate argument so flagrant as to interfere with or preclude our review. The record in this case is not voluminous. The relevant portions include a one-page exhibit, written orders of the trial court, a transcript from a one-day trial with three witnesses, and transcripts from the proceedings regarding attorney fees. We can adequately and objectively ascertain the factual background from these materials. Thus, we will not strike Turan's opening brief but disregard the portions we find noncompliant with Rule 341. See *Id.* ("Because the violation is not so flagrant that we are unable to review the appeal, we have simply disregarded the inappropriate statements."); see also *In re S.F.*, 2020 IL App (2d) 190248, ¶ 16 ("[W]e will not strike the statement of facts but will simply disregard any portions that we believe violate Rule 341.") (Internal quotation marks omitted.).

¶ 39　　　　　　　　　　　　B. Effect of the Vacatur

¶ 40　　　　On appeal, Turan first argues that the judgment against him must be vacated, reasoning that the circuit court's January 14, 2021 order vacating the judgment against Mint rendered the judgment against him logically and legally inconsistent. Turan posits that vacatur of the judgment against Mint "absolved [Mint] of all liability" and implied that Mint was not bound by the promissory note. Coupled with the court's earlier finding that the promissory note "constitute[d] Turan's personal guarantee of the admitted corporate debt," Turan contends that the judgment

against him must also be vacated, as he asserts that a guarantor's liability is no greater than the principal debtor. Put differently, Turan argues that he cannot be liable as guarantor of Mint's debt since the vacatur means that Mint was not liable for the debt in the first place.

¶ 41    Turan's argument misinterprets the circuit court's reasoning for vacating the judgment against Mint. The differing judgments against Turan and Mint did not result from the merits of the case or any factual or implied findings, as Turan contends. Rather, the differing judgments resulted from how the separate counts against each defendant were pled. The court vacated the count against Mint because that count was expressly pled in the alternative to the count against Turan. That is, the court took Tatyana's second amended complaint as only seeking to hold Mint liable if she were unsuccessful in establishing Turan's personal liability. Turan's counsel advocated for this very approach in opening and closing arguments. Under this reasoning, if Tatyana were to prevail on the claim against Turan, then the claim against Mint would become moot by operation of the second amended complaint's express pleadings. The court's January 14 order vacated the judgment against Mint for that reason alone. The court never found that Mint was not bound by the note and did not reverse its prior finding that Turan and Mint were jointly and severally liable. Vacatur of the judgment against Mint did not equate to entering a judgment or factual findings in Mint's favor on the merits, as Turan's argument wrongly assumes.

¶ 42    Beyond that, the trial court's vacatur of the judgment against Mint merely removed the judgment. It did not negate the trial evidence that showed Mint was bound by and liable on the note. A valid and enforceable contract requires an offer, acceptance, and consideration. *In re Estate of Adams*, 2020 IL App (1st) 190573, ¶ 46. The trial evidence showed that Turan and Tatyana discussed a loan to his company. Tatyana wanted a written agreement memorializing the terms of their transaction and Turan was willing to accept whatever made her "comfortable," since he

needed money. Later, the two met and each signed the promissory note containing the demand and "Guaranty" provisions. Contemporaneously, Tatyana tendered Turan a check for $50,000, which he accepted and deposited in his bank account. Turan testified that Tatyana's loan was to Mint, as evinced by the promissory note. While Turan admitted the $50,000 was Mint's debt, he contended repayment was conditioned upon the sale of the Keating property. Accordingly, the evidence demonstrated (1) an offer—Tatyana offered to lend Mint $50,000 on the terms of the promissory note, (2) acceptance—Turan accepted that offer and the terms of the note on behalf of Mint through his conduct (see *id*. ¶ 49 (quoting *Landmark Properties, Inc. v. Architects International-Chicago*, 172 Ill. App. 3d 379, 383 (1988)) ("[A] party named in a contract may, by his acts and conduct, indicate his assent to its terms and become bound by its provisions even though he has not signed it."), and (3) consideration—Tatyana tendered Turan a $50,000 cashier's check made payable to Mint. Consideration is a bargained-for exchange, whereby one party receives some benefit, or the other suffers detriment. *Khan v. Fur Keeps Animal Rescue, Inc.*, 2021 IL App (1st) 182694, ¶ 27. Thus, an enforceable contract was formed between Tatyana and Mint. Mint, moreover, was bound by the note irrespective of whether Turan signed the note on behalf of Mint. *Id*. ¶ 46 ("In the event that a written contract is unsigned, the parties' intent determines whether the contract is binding."). Also relevant, the promissory note did not include a term requiring a signature as a condition precedent to formation or to performance of any obligation under it. See *id*. ¶ 48 ("Where parties reduce the agreement to writing and its signature by them is a condition precedent to its completion, no contract will exist until that is done."). So, even if Turan's signature solely indicated his personal agreement to guarantee the loan, Mint was still bound by the note.

¶ 43        In sum, the circuit court's vacatur of the judgment against Mint had no effect upon the judgment against Turan. We affirm the judgment.

¶ 44                                    C. Award of Attorney Fees

¶ 45          Separately, Turan argues that the circuit court's award of attorney fees should be vacated. He makes several disjointed assertions, most of which we can reject straight away as positively refuted by the record, unsupported by the record or law, or lacking explanation of how the contention warrants the result he seeks. For instance, Turan asserts that there was no finding of a default on the note, yet that conclusion necessarily follows from the trial evidence and is imbued in the trial court's determination of liability. He further claims that Tatyana never filed a fee petition, yet the record clearly shows that she sought attorney fees in her complaint and the trial court allowed her to submit invoices from her counsel at trial, which she authenticated as accurately representing the legal expenses she incurred. Turan also argues that the award includes fees for work performed by another attorney. Tatyana's counsel testified that his professional corporation billed her for services performed both by him personally and the "of Counsel" attorney. We fail to see how that arrangement renders any of the award improper nor does Turan offer an explanation. Lastly, Turan claims hearsay was admitted at the fees hearing and that Tatyana's counsel gave false testimony. He neither offers specifics nor cites relevant pages of the record.

¶ 46          Supreme Court Rule 341 requires that the arguments asserted in an appellant's brief "contain the contentions of the appellant and the reasons therefor, with citation of the authorities and the pages of the record relied on." Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020). Arguments that do not satisfy this rule do not merit consideration on appeal and may be rejected for that reason alone. *Prairie Rivers Network v. Illinois Pollution Control Bd.*, 335 Ill. App. 3d 391, 408-09 (2002); see also *City of Highwood v. Obenberger*, 238 Ill. App. 3d 1066, 1083 (1992) ("any statement unsupported by argument or citation to relevant authority will not merit our

consideration on review."). Thus, we will disregard Turan's arguments that fail to comply with Rule 341. *Rottman*, 2018 IL App (1st) 180234, ¶ 23; *In re S.F.*, 2020 IL App (2d) 190248, ¶ 16.

¶ 47    We turn to Turan's more discernable contentions. Turan argues that Tatyana was not a prevailing party since the entirety of her first two complaints, as well as two counts in her second amended complaint, were dismissed on defense-filed motions. We reject this as a basis to disturb the award of attorney fees. "A prevailing party is one that is successful on a significant issue and achieves some benefit in bringing suit." *Oak Forest Properties, LLC v. RER Financial, Inc.*, 2018 IL App (1st) 161704, ¶ 13. Tatyana succeeded on the significant issue of Turan's liability on the promissory note, and she obtained a judgment against him. Thus, Tatyana was a prevailing party. It is of no moment that, during her ultimately successful litigation, she was required to replead and the circuit court dismissed certain counts that set forth alternate theories of relief. "A party can be a 'prevailing party' even if it does not succeed on all matters." *1002 E. 87th Street LLC v. Midway Broadcasting Corp.*, 2018 IL App (1st) 171691, ¶ 31 (citing *Powers v. Rockford Stop-N-Go, Inc.*, 326 Ill. App. 3d 511, 515 (2001)).

¶ 48    Turan further argues that the circuit court failed to assess Tatyana's fee request for reasonableness. We review a circuit court's award of attorney fees under an abuse of discretion standard. *Cavitt v. Repel*, 2015 IL App (1st) 133382, ¶ 58. When authorized by statute or express agreement, the court may award attorney fees to the prevailing party so long as they are reasonable. *Thomas v. Weatherguard Construction Co.*, 2018 IL App (1st) 171238, ¶ 61. "In determining whether the fee sought is reasonable, courts assess a number of factors, including the skill and standing of the attorneys, the nature of the case, the novelty and/or difficulty of the issues and work involved, the importance of the matter, the degree of responsibility required, the usual and customary charges for comparable services, the benefit to the client, and whether there is a

reasonable connection between the fees and the amount involved in the litigation." [Internal quotation marks omitted.] *Young v. Alden Gardens of Waterford, LLC*, 2015 IL App (1st) 131887, ¶ 102. Turan, however, does not specify how he believes the court's award was unreasonable. Instead, he merely states that the court failed to expressly consider these factors. "The circuit court is presumed to know the law and apply it properly, absent an affirmative showing to the contrary in the record." *Cavitt*, 2015 IL App (1st) 133382, ¶ 64. In our review of the record, nothing affirmatively indicates that the court did not consider proper factors in its determination of recoverable attorney fees or otherwise shows that the awarded amount is unreasonable. Accordingly, we find that the circuit court did not abuse its discretion.

¶ 49                              III. CONCLUSION

¶ 50        Based on the foregoing, we affirm the judgment of the circuit court.

¶ 51        Affirmed.