2025 IL App (1st) 241487-U

SECOND DIVISION
February 4, 2025

No. 1-24-1487

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| ANNE CORTESE, as special administrator appointed for BENEDETTA CORTESE, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | No. 22 M3 2212 |
| EWA EJSMONT, | ) ) ) | Honorable James P. Pieczonka, |
| Defendant-Appellee. | ) | Judge Presiding. |

_____

JUSTICE HOWSE delivered the judgment of the court.
Justices McBride and Ellis concurred in the judgment.

ORDER

¶ 1     *Held*:    We affirm the judgment of the circuit court of Cook County finding no prevailing party in the case for purposes of a contractual attorney fee shifting provision; the trial court did not abuse its discretion in comparing the parties' favorable outcomes in the litigation.

¶ 2      Benedetta Cortese, now deceased, filed a second amended complaint against defendant, Ewa Ejsmont, for breach of contract (count I) and breach of contract, consequential damages (count II). After Cortese's death, the trial court substituted Anne Cortese (Cortese's adult daughter), as special administrator for the decedent, as plaintiff in this case. The case proceeded to a bench trial, and at the close of plaintiff's case-in-chief the circuit court of Cook County granted a directed verdict in favor of defendant on count II. Following the trial, the trial court

entered judgment in favor of plaintiff on count I and awarded damages. The parties' contract contained a provision for attorney fees to the prevailing party in any litigation. The trial court found there was no "prevailing party" because both parties were successful on separate counts in the case. Plaintiff appeals only the trial court's finding that there was no prevailing party and declining to award plaintiff attorney fees pursuant to the contract. For the following reasons, we affirm.

¶ 3                                    BACKGROUND

¶ 4      On April 18, 2022, Benedetta Cortese filed a three-count complaint against defendant, Ewa Ejsmont, seeking damages resulting from a fire that rendered the condominium unit that Cortese rented from defendant uninhabitable. The complaint alleged that Cortese occupied the unit pursuant to a lease governed by the Cook County Residential Tenant and Landlord Ordinance (CCRLTO). The parties' lease contained the following provisions that are relevant in this appeal:

"9. DAMAGE BY FIRE OR CASUALTY: ***If the damage is caused by Tenant's willful act or negligence Tenant shall be responsible for all costs of repair of the Premises and Tenant shall remain obligated to pay all rent and other charges through the end of this Lease, regardless of the habitability of the Premises.

11. DEFAULT: *** In any action with respect to this Lease, the Parties are free to pursue any legal remedies at law or in equity and the prevailing Party in litigation shall be entitled to collect reasonable attorney fees and costs from the non-prevailing Party as ordered by a court of competent jurisdiction.

12. HOLDOVER: Tenant will deliver possession of the Premises to Landlord upon expiration or termination of this Lease. If Tenant fails to do so, Tenant will pay an amount equal to three (3)

times the monthly rent specified in this Lease for each month or portion thereof that Tenant remains in possession of the Premises.

13. LIABILITY: *** Tenant shall be required to maintain renter's insurance during the term of this Lease."

¶ 5    According to the complaint, the fire on April 6, 2021, rendered the unit uninhabitable, caused Cortese property damage and personal injury (Cortese alleged that after the fire she was unable to walk), injured her daughter's cat, and forced Cortese to rent a new apartment and incur related expenses. On August 9, 2023, Cortese filed a second amended complaint in two counts. Count I of the second amended complaint alleged breach of contract for defendant's failure to return the rent plaintiff paid for the month of April 2021 for the period after the fire (April 6, 2021), when the unit became uninhabitable until the end of the month totaling $1,000. Count I also sought damages of $1,200 based on defendant's failure to return Cortese's security deposit. Count I also sought costs and attorney fees. Count II of the complaint alleged "Breach of Contract Consequential Damages" and sought damages for "personal property damage, incurring moving expenses, and vet bills due to the fire" totaling $7,697.78 plus costs and attorney fees.

¶ 6    On September 13, 2023, defendant filed a motion to dismiss the second amended complaint pursuant to section 2-619(a)(9) of the Code of Civil Procedure (735 ILCS 5/2-619(a)(9) (West 20222)). Defendant argued that Cortese failed to allege the existence of a latent defect as required for a claim of breach of the implied warranty of habitability or that defendant had knowledge of a latent defect[1]; and that undisputed evidentiary matter establish that Cortese

---

[1]    "The warranty also requires that at the inception of the lease there be no latent defects in those facilities vital to the use of the dwelling for residential purposes and vital to the life, health, and safety of the tenant and that the premises will remain habitable throughout the term of the lease. [Citation.]

could never prove that defendant had notice of a latent defect because defendant was not the builder of the property; and that the fire was not caused by a latent defect. Defendant also argued that Cortese failed to plead causation as required for a breach of contract claim and that "causation is non-existent." Finally, defendant argued that Cortese failed to plead a right to the return of the security deposit and "the undisputed facts show that [Cortese] is not entitled to have [the security deposit] returned" because under the terms of the lease Cortese underpaid the rent as a holdover tenant and because Cortese caused the fire and is responsible for the cost of repairs, which exceeded the amount of the deposit. Defendant's motion argued that the only record evidence of the cause of the fire is the fire investigator's affidavit and report finding that the fire resulted from Cortese storing items in a closet too close to an incandescent light bulb; and, therefore, causation is lacking as to both counts of the second amended complaint. Defendant supported the motion with defendant's affidavit and an affidavit by the fire investigator who actually conducted the investigation.

¶ 7    On January 10, 2024, Cortese's attorney filed a motion pursuant to section 2-1008(b)(1) of the Code (735 ILCS 5/2-1008(b)(1) (West 2022)) to spread of record the death of Benedetta

---

In order to constitute a breach of the implied warranty of habitability, [a] defect must be of such a substantial nature as to render the premises unsafe or unsanitary, and thus unfit for occupancy." *Glasoe v. Trinkle*, 107 Ill. 2d 1, 13 (1985).

"To establish a breach of the warranty of habitability, the tenant must plead and prove that the landlord had notice of the defect and a reasonable opportunity to cure. Notice may be established by [citations]:

- Actual notice from the tenant
- The landlord's having actual knowledge of the defect
- The landlord's having constructive knowledge of the defect by being in a position to know of the defect (for example, where the landlord built the residence)." § 11:35. Notice to landlord, 2 Illinois Real Property § 11:35.

Cortese and to appoint Cortese's daughter, Anne Cortese, as special representative of the deceased and to substitute Anne Cortese as plaintiff for the purpose of prosecuting this action. On February 6, 2024, decedent's attorney filed Anne Cortese's petition pursuant to section 2-1008(b) of the Code to appoint Anne Cortese as special representative for the deceased for the purpose of prosecuting and defending this action and for substitution as plaintiff. On March 18, 2024, the trial court granted the petition.

¶ 8    The case went to trial, and, after plaintiff rested, defendant moved for a directed verdict. On May 22, 2024, the trial court granted directed verdict in favor of defendant on count II of the second amended complaint where plaintiff sought damages for property damage and consequential damages. The court denied the motion for directed verdict on count I which sought the return of the security deposit and a portion of the April rent. Plaintiff filed a motion to reconsider, which the trial court denied. On June 26, 2024, after the presentation of all evidence and closing arguments, the trial court entered judgment in favor of plaintiff on count I of the second amended complaint. The trial court awarded plaintiff damages of $2,160 ($1,200 for the unreturned security deposit and $960 for the portion of the April rent). The trial court found "there is no prevailing party and no bad faith by the landlord." The trial court did not award plaintiff attorney fees.

¶ 9    This appeal followed.

¶ 10                              ANALYSIS

¶ 11    This is an appeal of a judgment finding no "prevailing party" in litigation between a tenant and a landlord based on the application of undisputed facts to a provision in the parties' lease contract. "Whether either party prevailed *** in the trial court below involves an application of the facts to [the] law. Therefore, it remains a matter committed to the discretion of

the trial court." (Internal quotation marks omitted.) *Peleton, Inc. v. McGivern's Inc.*, 375 Ill. App. 3d 222, 226 (2007) (quoting *Powers v. Rockford Stop-N-Go, Inc.*, 326 Ill. App. 3d 511, 516 (2001)). In cases of this type, where the interpretation of the term in the lease is not at issue and the judgment involves only the application of the lease term to the undisputed facts, "our review is based on an abuse of discretion standard." *Peleton, Inc.*, 375 Ill. App. 3d at 226 (citing *Rockford Stop-N-Go, Inc.*, 326 Ill. App. 3d at 516), see also *Oak Forest Properties, LLC v. RER Financial, Inc.*, 2018 IL App (1st) 161704, ¶ 11 ("Because the trial court applied the terms of the lease agreement to the facts, we review the trial court's ruling for an abuse of discretion."). "An abuse of discretion occurs when the ruling is arbitrary, fanciful, or unreasonable, or when no reasonable person would take the same view." (Internal quotation marks omitted.) *Morris v. Harvey Cycle & Camper, Inc.*, 392 Ill. App. 3d 399, 407 (2009).

¶ 12     The sole issue in this appeal is whether the trial court abused its discretion in finding that neither party was a "prevailing party." Plaintiff argues that pursuant to this court's decision in *Naperville South Commons, LLC v. Nguyn*, 2013 IL App (3d) 120382, plaintiff qualifies as the prevailing party in this case because plaintiff "was successful on her Count I claim and received a judgment of $2,160." We find plaintiff's characterization of and reliance on *Naperville South Commons, LLC* is mistaken. In *Naperville South Commons, LLC*, a landlord filed a complaint in forcible entry and detainer against a tenant seeking possession and back rent. *Naperville South Commons, LLC*, 2013 IL App (3d) 120382, ¶ 3. The tenant voluntarily tendered possession and the trial court found that the landlord did not sustain their burden to prove the tenant owed any rent. *Id.* ¶ 8. Both parties filed petitions for attorney fees. *Id.* ¶¶ 7-8. Because the tenant voluntarily tendered possession, the trial court found that the landlord did not prevail on that

issue. *Id.* ¶ 8. The "court ruled that the tenant was the prevailing party and granted [their] petition for fees and costs." *Id.*

¶ 13  This court found that since "the landlord did not obtain judgment in its favor, and was not successful on any significant issue in the action, and the tenant prevailed in a substantial part of the litigation," therefore, "the tenant was the prevailing party." *Id.* ¶ 17. *Naperville South Commons, LLC* does not stand for the proposition that plaintiff suggests: that a plaintiff is necessarily the "prevailing party" if they obtain *any* relief. Rather, the court applied the well-settled rule in Illinois that "[a] party *can* be considered a prevailing party for the purposes of awarding fees when [they are] successful on any *significant* issue in the action and achieve[] some benefit in bringing suit, receive[] a judgment in [their] favor, *or* obtain[] some affirmative recovery." (Emphases added.) *Naperville South Commons, LLC*, 2013 IL App (3d) 120382, ¶ 16. Furthermore, the court, although not expressly, applied a comparative analysis to the outcome of the litigation to determine which, if either, party was the prevailing party. See *id.* ¶ 17. There is no *per se* rule that a party is a prevailing party simply because they obtained a favorable judgment. *Naperville South Commons, LLC* does not abrogate the rule that the question of whether either party is a prevailing party is a matter within the sound discretion of the trial court. *Peleton, Inc.*, 375 Ill. App. 3d at 226 (quoting *Rockford Stop-N-Go, Inc.*, 326 Ill. App. 3d at 516).

¶ 14  Defendant cites *Oak Forest Properties, LLC* for the proposition that in cases where both parties have achieved success on some issues, like this one, a comparative analysis is typically applied to determine whether either party is the prevailing party. Defendant compares the parties' successes and concludes that "if any party was a prevailing party *** it was Defendant;" nonetheless, the trial court's finding "that neither party was a prevailing party was not an abuse of discretion." Defendant argues that defendant obtained a directed verdict on count II of the

second amended complaint, saving defendant from a potential $7,697.78 judgment plus costs and attorney fees for count II. Defendant argues the dollar amount alone "was much more significant" than plaintiff's success on count I. Defendant further argues that defending the claim for consequential damages (count II) was more complex than litigating the claim for the return of the security deposit and prorated rent because it "involved multiple items and took far more time at trial." Defendant also notes that defendant successfully defended other claims in earlier versions of the pleadings by achieving dismissal of those claims; claims which, defendant argues, "were far more complex than a simple return of security deposit [and prorated rent] claim," and which required significantly more time than the claims in count I.

¶ 15    Plaintiff replies defendant is attempting to "create new law that when a defendant prevails on one count and loses one count there is no prevailing party." Plaintiff also notes that defendant did not file a counterclaim (and argues, therefore, that defendant did not prevail on a separate claim). Plaintiff repeats the argument that plaintiff is a prevailing party simply because plaintiff obtained some relief in the form of a judgment in favor of plaintiff. Plaintiff argues that the trial court should award "some fees in instances where the plaintiff does not win all their claims."

¶ 16    "A party may be considered a prevailing party for the purposes of a fee award if (1) it succeeds on any significant issue in the action and achieves some benefit in bringing suit, or (2) it receives a judgment in its favor, or (3) it obtains an affirmative recovery. [Citations.] A party may be the prevailing party even if it does not succeed on all matters or claims." *Pepper Construction Co. v. Palmolive Tower Condominiums, LLC*, 2024 IL App (1st) 221319, ¶ 22. Further, "[a] successful litigant is still considered the prevailing party under a fee-shifting provision even if the judgment amount is below the amount claimed." *Rockford Stop-N-Go, Inc.*,

326 Ill. App. 3d at 515. In a case in which both parties succeed on a significant issue, "it may be inappropriate to find that either party is the prevailing party and an award of attorney fees to either is inappropriate. [Citation.]" *Oak Forest Properties, LLC*, 2018 IL App (1st) 161704, ¶ 13. "The significant issue test is the means by which Illinois courts determine whether a party prevailed in a case and is entitled to attorney fees. [Citation.]" *Oak Forest Properties, LLC*, 2018 IL App (1st) 161704, ¶ 17 (citing *Rockford Stop-N-Go, Inc.*, 326 Ill. App. 3d at 515). "In a case involving multiple claims for relief, the significant issue test is a comparative analysis: significance is determined by weighing the relative value and complexity of the issues presented and the amount of time the parties devoted to each issue. No single claim is significant in and of itself." *Oak Forest Properties, LLC*, 2018 IL App (1st) 161704, ¶ 17.

¶ 17    We agree that the fact that plaintiff received a judgment on only a portion of plaintiff's claims does not necessarily preclude a finding that plaintiff is a prevailing party. *Palmolive Tower Condominiums, LLC*, 2024 IL App (1st) 221319, ¶ 22 ("A party may be the prevailing party even if it does not succeed on all matters or claims."). Nor does the fact that as a result of defendant's motions plaintiff had to file two amended complaints require the trial court to find that plaintiff is *not* the prevailing party as a matter of law. See *Rivtis v. Woma, Inc.*, 2022 IL App (1st) 210147-U, ¶ 47. In that case, the plaintiff received a judgment and the trial court awarded the plaintiff attorney fees. *Rivtis*, 2022 IL App (1st) 210147-U, ¶ 2. On appeal of the award of attorney fees, the defendants argued that the plaintiff "was not a prevailing party since the entirety of her first two complaints, as well as two counts in her second amended complaint, were dismissed on defense-filed motions." *Id*. ¶ 47. This court rejected that argument "as a basis to disturb the award of attorney fees." *Id*. This court found that the plaintiff "succeeded on the *significant issue* of [the defendants'] liability ***, and *** obtained a judgment ***. Thus, [the

plaintiff] was a prevailing party." *Id*. This court found it "of no moment that, during [the] ultimately successful litigation, [the plaintiff] was required to replead and the circuit court dismissed certain counts that set forth alternate theories of relief." (Emphasis added.) *Id*.

¶ 18 While there is no *per se* rule as to which party qualifies as the prevailing party, or why, this court applies the significant issue test as the means to determine whether a party prevailed in a case and is entitled to attorney fees. See *Oak Forest Properties, LLC*, 2018 IL App (1st) 161704, ¶ 17. In doing so this court has rejected an argument that "the successful return of a security deposit [in a lease dispute] is a *per se* significant issue." *Id*. ¶ 14. Rather, the court must examine the return of the security deposit "in relation to the [party's] unsuccessful claims" by looking at "the relative value, complexity, and time devoted to the issues at trial." *Oak Forest Properties, LLC*, 2018 IL App (1st) 161704, ¶ 15 (citing *Rockford Stop-N-Go, Inc.,* 326 Ill. App. 3d at 518).

¶ 19 We have reviewed the transcript of the trial. Plaintiff's adverse direct examination of defendant devoted significant time to the issue of renter's insurance, which defendant's attorney argued in opening would have obviated plaintiff's consequential damages. However, that matter also went to the return of the security deposit. Plaintiff primarily testified about personal property damage (the damage to property in the unit, what was done with the property after the fire and the cost of disposal, what could be salvaged, and the value of the property that could not be salvaged) which is in relationship to the consequential damages claim. Similarly, on cross-examination defense counsel elicited some testimony from plaintiff regarding issues related to the return of the security deposit (*e.g*., whether Cortese was responsible for the cost of repairs due to the fire and whether Cortese complied with all of the lease requirements, particularly maintaining renter's insurance), but the bulk of the cross-examination went to issues related to

consequential damages, specifically the loss of personal property. Defendant testified she did receive the security deposit but did not return it because defendant thought Cortese caused the fire (although the trial court struck defendant's testimony as to why defendant thought that).

¶ 20    At the close of plaintiff's case defendant moved for directed verdict on the ground plaintiff failed to meet their burden to prove Cortese's performance of the contract and, therefore, plaintiff failed to make a *prima facie* case for breach of contract. Defendant's main argument was that Cortese failed to perform by not having renter's insurance. The trial court found that the motion for a directed verdict based on non-performance for not having renter's insurance, "that goes to the breach of contract count, the consequential damages part of this case." However, the court found that "Count I talks about breach of contract for implied warranty of habitability. *The parties all agreed that it wasn't habitable after the fire*." (Emphasis added.)

¶ 21    The trial court believed the "real issue is what caused the fire" and who was responsible. The court found the evidence was not sufficient "either way as to what the cause was or who was the cause of the fire. So we don't know who's liable under the contract ***." The court also found there was evidence the security deposit was received but no evidence as to why it was not returned. The court ruled that it was granting directed verdict as to count II for consequential damages because plaintiff materially breached the contract by not having renter's insurance then later added that its ruling was also based on "the fact that Plaintiff did not prove the fire was caused by defendant's negligence." The court denied the motion as to count I because the court found that the breach for not having renter's insurance was not material to the security deposit part of the contract.

¶ 22    Plaintiff's closing argument, which could only address count I, asserted that no evidence established that Cortese caused the fire or was ever notified that she was in default of the lease; therefore, plaintiff was entitled to a return of the rent paid for the period after the fire and the security deposit. Similarly, the defense argued that because Cortese caused the fire, Cortese remained obligated for the rent and for the cost of damage, and the damage caused by the fire used up the security deposit. In rebuttal plaintiff's attorney argued that defendant failed to prove the security deposit was used to repair the damage from the fire or to notify Cortese the deposit had been used up in that way. Both parties also made arguments about which party was the prevailing party for purposes of attorney fees.

¶ 23    The trial court found that neither party proved that the other party caused the fire, "[s]o the only logical inference was that it was some kind of an accident, nobody is at fault. So the negligence part of this contract, this lease, does not apply." The court found that it was undisputed that the unit was uninhabitable and, therefore, since "[Cortese] had to vacate, the proration should be allowed." The court noted that defendant did not give Cortese a reason for not returning the security deposit or an itemization of how it was used but there was no bad faith on defendant's part. The court found that plaintiff was entitled by law to return of the security deposit but the court declined to impose a penalty on defendant.[2] The trial court also orally ruled as follows: "So then that leaves the issue as to whether the prevailing party in this case is entitled to attorney's fees [*sic*]. I believe Count I went to the plaintiff, and Count II went to the

---

[2]    "Upon a finding by a circuit court that a lessor has refused to supply the itemized statement required by this Section, or has supplied such statement in bad faith, and has failed or refused to return the amount of the security deposit due within the time limits provided, the lessor shall be liable for an amount equal to twice the amount of the security deposit due, together with court costs and reasonable attorney's fees." 765 ILCS 710/1(c) (West 2022).

defendant. I'm going to rule that there is no prevailing party here, and there won't be any attorney's fees [*sic*]."

¶ 24    The trial court did not expressly discuss the value and complexity of the issues or counts, but the record is clear that count I of plaintiff's second amended complaint sought damages of $2,200 and count II sought damages of $7,697.78. Count I involved the return of rent since the unit became uninhabitable and the security deposit, while count II involved claims of consequential damages. In terms of relative value, the security deposit and rent issues "did not compare" to the consequential damages issue. The monetary value of count II far exceeded the value of count I. Both counts were based on breach of contract and the implied warranty of habitability. There was no dispute at trial that after the fire the unit was uninhabitable. The determinative fact for both counts was the cause of the fire. Under count I, if Cortese caused the fire, there would be no right to a return of the security deposit or prorated rent because under the terms of the lease Cortese would be responsible for repairs and to continue to pay rent. Under count II, if Cortese caused the fire, defendant would not have caused Cortese's loss. The parties failed to prove the cause of the fire so the trial court treated it as an accident. Given the overlapping issues, we cannot say one issue was more complex than the other. Both issues required the same proof—the cause of the fire—and both parties failed in that regard. In terms of the amount of time devoted at trial, the majority of time at trial was spent on consequential damages.

¶ 25    We find that defendant succeeded on a significant issue: the issue with the most value and that consumed the most time at trial, and the relative complexity of the issues was "a draw." Nonetheless, plaintiff received a judgment in plaintiff's favor on count I of the second amended complaint. As we stated earlier, "[a]n abuse of discretion occurs when the ruling is arbitrary,

fanciful, or unreasonable, or when no reasonable person would take the same view." *Harvey Cycle & Camper, Inc.*, 392 Ill. App. 3d at 407. We cannot say that no reasonable person would take the trial court's view in this case or that the decision was arbitrary, fanciful, or unreasonable. Therefore, we cannot say that the trial court abused its discretion when it found that "there is no prevailing party here." Both parties could be considered the prevailing party. *Pepper Construction Co.*, 2024 IL App (1st) 221319, ¶ 22 ("A party may be considered a prevailing party for the purposes of a fee award if (1) it succeeds on any significant issue in the action and achieves some benefit in bringing suit, or (2) it receives a judgment in its favor, or (3) it obtains an affirmative recovery."). "We have repeatedly held that [w]here the two parties both won and lost on claims in the proceedings below, neither party can be said to have been the prevailing party." (Internal quotation marks and citations omitted.) *Uncle Tom's, Inc. v. Lynn Plaza, LLC*, 2021 IL App (1st) 200205, ¶ 74. In *Lynn Plaza, LLC*, the "claim" on which the non-petitioning party was successful—thereby nullifying a finding that either party was the prevailing party—was not a counterclaim but was an "argument[] made by [the non-petitioning party] in response to [the petitioning party's] forcible entry and detainer action." *Lynn Plaza, LLC*, 2021 IL App (1st) 200205, ¶ 39. Therefore, the fact that defendant achieved a directed verdict on plaintiff's count II rather than succeeded on a counterclaim does not alter the outcome. We find no abuse of discretion and affirm the trial court.

¶ 26 CONCLUSION

¶ 27 For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

¶ 28 Affirmed.